## CHARLESTON.

MULLAN'S ADM'R, et al. v. CARPER.

(BRANNON, J., absent.)

Submitted June 10, 1892.—Decided December 3, 1892.

1. COLOR OF TITLE—DEED—ADVERSE POSSESSION.

Any written instrument, however defective or imperfect, and no matter from what cause invalid, purporting to sell, transfer, or convey title to land, which shows the nature and extent of the party's claim, constitutes "color of title," within the meaning of the law of adverse possession. (p. 226).

2. COLOR OF TITLE—DEED.

A court of equity without jurisdiction of the person pronounces a decree for the sale of a certain parcel of land, and appoints commissioners, with directions to make the sale. They sell the land; the court confirms the sale, and appoints the commissioners to convey the land to the purchaser on payment of the purchase-money. The purchase-money is paid, and the commissioners make to the purchaser a deed purporting to convey the land in fee. Such deed being proved constitutes color of title. (p. 227).

| 37 | 215 |
| 37 | 638 |
| 37 | 215 |
| 41 | 273 |
| 37 | 215 |
| 42 | 16 |
| 37 | 215 |
| 45 | 659 |
| 37 | 215 |
| f47 | 214 |
| 37 | 215 |
| e54 | 618 |
| 37 | 215 |
| 57 | 470 |
| 37 | 215 |
| 59 | 116 |
| 37 | 215 |
| 62 | 598 |
| 37 | 215 |
| 65 | 131 |

3. Color of Title—Deed—Statute of Limitations.

Under such deed the purchaser and those claiming under him held the house and lot in question in actual, visible and exclusive possession continuously for more than ten years before the bringing of the suit, claiming it in fee as their own, subject only to the wife's contingent right of dower. *Held*, the remedy of the original owner and of those claiming under him is barred, and their right to the possession extinguished. (p. 229).

4. Color of Title—Statute of Limitations—Dower.

The statute of limitations in such case did not run against the wife during coverture, because the nature of the party's color of title and the holding thereunder were not repugnant to, but consistent with, the wife's contingent right of dower. (p. 233).

*J. Bassell* and *C. C. Higginbotham,* counsel for appellants:

I.—*Adverse possession lies on title utterly void.*—26 W. Va. 635; Id. 244; 20 W. Va. 485; 22 W. Va. 125; 5 Gratt. 110.

II.—*Adverse possession lies for vendee, after deed purporting to convey even against vendor.*—24 W. Va. 244; 1 Pet. 480; 25 Gratt. 144; 5 Pet. 402; 28 W. Va. 749.

III.—*A void patent gives adverse possession.*—34 Ark. 547; 17 Fla. 557; 13 Tex. 94; 23 Tex. 36.

IV.—*A void tax-deed gives adverse possession.*—23 W. Va. 675.

V.—*A case of gross negligence and laches.*—14 S. E. Rep. 423; 23 W. Va. 108; 21 Wall. 514.

*W. G. L. Totten* and *Dayton & Dayton* counsel for appellees, cited 22 W. Va. 180; Id. 404; Id. 570; Id. 661; 21 W. Va. 347; Id, 415; 24 W. Va. 234; 25 W. Va. 751; 23 Gratt. 409; 27 Gratt. 511; 93 U. S. 274; 11 Wall. 267; 10 Wall. 172; 91 U. S. 10; 15 Wall. 184; 17 Wall. 439; 34 W. Va. 480; 26 W. Va. 58; 27 W. Va. 468; 23 W. Va. 675, 683; 9 W. Va. 671; 18 W. Va. 598; 12 Gratt. 452; 14 S. E. Rep. 426; 30 W. Va. 779.

Holt, Judge:

This suit in equity was brought in the Circuit Court of Upshur county in January, 1888, by the administrator and heirs of Samuel H. Mullan, deceased, against Abram Carper and others, to declare null and void certain judgments,

decrees, and other legal proceedings had against said Mullan and others, under which certain real estate situate in the town of Buckhannon was sold and conveyed to Bennett Carper's vendee, and to restore the possession of said real estate to plaintiffs as the heirs of said Mullan.

Such proceedings were had that on the 10th day of June, 1891, the Circuit Court of Upshur declared such judgments decrees and deeds void, and that they be cancelled and annulled, and that the plaintiffs were entitled in fee simple and to the possession of the parcels of land mentioned and described; and ordered that on failure of the persons in possession of the said two tracts or parcels of land to surrender the possession thereof to the plaintiffs by the 1st day of September, 1891, then the sheriff of the county of Upshur, after that time, was ordered to put the plaintiffs in possession of said two tracts of land. From this decree Carper, defendant below, has obtained this appeal.

From the pleadings and proofs the material facts are as follows: Samuel H. Mullan was a minister of the Methodist Church, South, residing in the town of Buckhannon, a member of the mercantile firm of R. Coyner & Co., doing business in that town, and from the 30th day of October, 1857, the owner in fee of two certain lots of land situate therein. In the spring of 1861, being in sympathy with the south, he removed from the county of Upshur to Albemarle county, Va., where he resided continuously during the Civil War. But he was presiding elder in his church of the district embracing the county of Upshur during the years 1768, 1869, 1870, 1871, and lived in the town of West Milford, in the adjoining county of Harrison, and was frequently in the town of Buckhannon during those years.

After the president's proclamation of August 16, 1861, and while the said Mullan resided in the county of Albemarle, John J. Burr, since deceased, brought suit in December, 1861, in the county of Upshur against Coyner and Mullan, who composed the firm of R. Coyner & Co., and obtained judgment at March term, 1862, for three hundred and eight dollars and fifty cents. Devries, Stephens & Thomas, at the same term, obtained judgment against them for six hundred and sixty two dollars and forty cents. At the

August term, 1862, E. and S. Frey obtained judgment for two hundred and twenty two dollars and fifty two cents and Sam Elder, administrator of William Nelson, deceased, obtained judgment against Mullan alone for fifty two dollars and sixty cents at August term, 1861.

At February rules, 1864, Devries, Stephens & Thomas instituted a suit in equity in the Circuit Court of Upshur county against Coyner and Mullan, late partners, composing the firm of R. Coyner & Co., to subject to sale the real estate of Mullan for the satisfaction of said judgment. At July rules, 1864, John J. Burr instituted in said court his suit in chancery against the members of said firm for the satisfaction of his judgment. Such proceedings were had in these two causes that at the March term, 1869, the Circuit Court pronounced a decree by which it appointed John S. Fisher and William C. Carper special commissioners, and directed them to sell the said real estate of Mullan, and apply the proceeds in satisfaction of said two judgments and of several other judgments.

On the 19th day of October, 1869, these commissioners sold the said real estate, at which sale Isaiah M. Bennett became the purchaser, at the price of nine hundred and forty six dollars. At the October term, 1869, the sale was confirmed. Bennett took possession, and the commissioners were directed to collect the purchase-money, and pay it over to those entitled under the decree, which was done, and on such payment convey said real estate to Bennett, the purchaser, which said commissioners did, by deed dated December 14, 1875.

On the 3d day of November, 1870, Bennett and wife sold and conveyed this real estate by deed of general warranty to Jerusha E. Hinkle, for the sum of one thousand eight hundred dollars, which was all paid. On 20th March, 1880, Jerusha E. Hinkle, in consideration of one thousand eight hundred dollars, by deed of general warranty, sold and conveyed said real estate to defendant and appellant, Abram Carper, who paid all the purchase-money. Afterwards various portions of the property passed by sales and conveyances to the various other defendants, at dates and in parcels not necessary to be mentioned. All the deeds were

duly admitted to record. Isaiah M. Bennett, defendant, Abram Carper, and those claiming under them, have held actual, continuous, exclusive, and adverse possession of said real estate, claiming title thereto and paying taxes thereon, from the 19th day of October, 1869, until the present time.

The bill charges that the various defendants are in possession of their respective parcels. Samuel H. Mullan departed this life in August, 1887, and this suit was brought at January rules, 1888. Isaiah M. Bennett died in 1876, and Jerusha E. Hinkle some time before the bringing of this suit.

The appellant assigns the following grounds of error :

*First.* Said court, having all the parties before it, erred in not decreeing in favor of your petitioner on his covenant of warranty against the said Jerusha E. Hinkle.

*Second.* The court erred in not dismissing said bill, as your petitioner, and those claiming under him, and those under whom he claims, had actual and adverse possession of said real estate for more than ten years before the institution of this suit.

*Third.* The court erred in not dismissing said bill on the ground of *laches*, as your petitioner and those claiming under him and those under whom he claims held actual and exclusive possession of said real estate for nearly twenty years before the institution of this suit, during which time many of the parties interested therein died ; yet the said Samuel H. Mullan, and those claiming under him, never gave the slighest intimation of any claim to said real estate until the institution of said suit.

*Fourth.* The court erred in not dismissing said bill for divers other errors appearing upon the face of the record.

The judicial proceedings here complained of were taken within the United States military lines in the Circuit Court of Upshur county, during the late Civil War, against S. H. Mullan, who was absent in Albemarle county, Va., within the Confederate lines, who did not appear, and who had no notice thereof; therefore such proceedings are absolutely void, as has been settled by a long line of decisions, among them *Grinnan* v. *Edwards*, 21 W. Va. 347, (1883;) *Haymond* v. *Camden*, 22 W. Va. 180 ; *Sturm* v. *Fleming*, Id.

404; *Hall* v. *Lowther*, Id. 570; *Stephens* v. *Brown*, 24 W. Va. 234; *Lynch* v. *Andrews*, 25 W. Va. 751; *Hall* v. *Hall*, 27 W. Va. 468.

Taking the assignments of error in the inverse order, under No. 4 it might be asked what there is on principle in the case to justify a suit in equity, and to deprive the defendant of a trial by jury; but as this point is not relied upon specifically, assigned in error or argued, I pass to No. 3, taking it as proper under the authority of our cases.

No. 3. This is put upon the ground of *laches*. The decedent, Rev. M. S. Mullan, owned and occupied as his home the house and lot in question, situated in the town of Buckhannon. He moved from it with his family, on account of the Civil War, in the spring of 1861, going to the county of Albemarle. As presiding elder of a district which included the town and church of his old home, he returned with his family in 1868, and resided in the adjoining county of Harrison until the spring of 1871. During this time his duties called him frequently in and through the town of Buckhannon, where he had lived and carried on business as a merchant, and he was in the town of Buckhannon at various times during the years 1868 and 1869, and for how much longer the witnesses were not able to say; it is fair to presume until the 26th of February, 1871, at least.

He could not shut his eyes to the fact that strangers were living in his old home, and, if they did not tell him, the records of the office would to some extent show the nature of their claim. He knew—he must have known—that his old home was occupied and claimed by these defendants and their vendors and vendees.

It might be said that up to February 21, 1872, he could do nothing on account of the suitor's test oath, provided the plaintiffs could take it and he could not, neither of which facts appear. But thenceforward nothing stood in his way, except a void decree, which, in legal effect, was no decree, for by it no right of his was divested; from it no rights were obtained. All claims flowing out of it were void, and the parties occupying his house and lot under and by virtue of such decrees were responsible as trespassers from the beginning, and liable to be turned out by

ejectment. Yet he permitted these parties to hold and possess this property, claiming it as their own, against him, from the fall of 1869 down to his death, in August, 1887, and his heirs after him, down to the institution of this suit, in January, 1888.

I can see but two modes in which to account for his conduct : (1) He saw that these claims against him or his firm amounted to some four thousand five hundred dollars, principal—much more apparently than his property was worth at its best—and he determined to let his creditors take it and make the most of it, in such manner as they saw fit; for the void judgments and decrees did not merge the causes of action, nor prevent plaintiffs from obtaining valid judgments and decrees. (2) If he did not of set purpose abandon his right and relinquish his property to his creditors and those who bought under the decrees, then, by laches and neglect, he and his heirs failed to assert his rights in any manner during a period of sixteen or eighteen years.

In the mean time the possession and apparent ownership of the property has passed by division and successive sales through and into the hands of many persons, calling for the exhibition of some sixteen deeds with plaintiffs' bill. The debtor, S. H. Mullan, is dead ; very many of the creditors of the firm are dead ; so, also, Isaiah M. Bennett, the purchaser under the decree, and Jerusha E. Hinkle, his vendee, are both dead. Some of these many sales and transfers of possession must have been made with a knowledge thereof on the part of S. H. Mullan.

The rule is well settled, "equity aids the vigilant not those who slumber on their rights." The party must come with reasonable promptness, for equity always refuses relief to stale demands. The defence is peculiar to courts of equity, and applies, although no statute of limitations governs the case, and is based, among other things, upon considerations that the delay has or may have been prejudicial, by reason of the difficulty of proving the facts, or by reason of the intervention of equities in favor of innocent persons, or, if allowed, because it may unsettle rights and titles, and prevent improvements. In other words, like the statute of limitations, it comprehends the doctrine of quiet and repose.

The doctrine is not arbitrary or technical, but, in fixing the time, generally follows the analogy of some statute of limitations, if any exist. If the party has by his conduct done that which may fairly be regarded as a waiver of his right and remedy, or where, perhaps, not waiving his remedy, he has by his conduct or neglect put the other party in a situation where it would not be reasonable or fair to place him, if the remedy is afterwards to be asserted, in either of these cases lapse of time and delay are most material. But in every case, if an argument against relief, which otherwise would be just, is founded on mere delay, that delay of course not amounting to a bar by any statute of limitations, the validity of such defence must be tried upon principles substantially equitable.

Two circumstances always important in such cases are the length of the delay and the nature of the acts done during the interval, which might affect either party, and cause a balance of justice or injustice in taking the one course or the other, so far as relates to the remedy. See *Erlanger* v. *Phosphate Co.*, L. R. 3 App. Cas. 1218, cited in note in 1 Beach. Mod. Eq. Jur. 17, and other cases. Therefore the principal foundations of the doctrine are acquiescence and lapse of time; but other circumstances will be taken into consideration. See *Bell* v. *Hudson*, 73 Cal. 285 (14 Pac. Rep. 791); *Brown* v. *County of Buena Vista*, 95 U. S. 160; *Landrum* v. *Bank*, 63 Mo. 56; *Ravner* v. *Pearsall*, 3 Johns. Ch'y 586; *Reynolds* v. *Sumner*, 126 Ill. 58 (18 N. E. Rep. 334).

In this case we proceed upon the concession that in these legal proceedings complained of the court had no jurisdiction of the person, and therefore the proceedings were absolutely void. "No action upon the part of the plaintiffs, no inaction upon the part of the defendants, no resulting equity in the hands of third persons, * * * can invest it with any of the elements of power and vitality." 1 Freem. Judgm. (4th Ed.) § 117, and cases cited.

In this case, as we have already seen, S. M. Mullan, by every fair presumption and reasonable inference, knew that the commissioners were selling or had sold his house and lot at public outcry in October, 1869, four years after the

war was over, and when he was back at Buckhannon as presiding elder. He knew that I. M. Bennett bought it, for he must have seen him in possession as the apparent owner; that Bennett sold and transferred it to Jerusha E. Hinkle in November, 1870, for he must also have known her to be in possession by her tenant Mrs. Boggess in 1879, herself in 1871 to 1878, then by her tenant C. C. F. Mc-Whorter to 1880, then by appellant, Abram Carper, and his vendees, down to his death, in August, 1887.

During this time many sales and transfers of possession of this property and of various subdivisions of it were made. A railroad came, with increase of values, and various valuable and permanent improvements, and many of the vendees and vendors have died; and the claims of the wholesale merchants against the firm of R. Coyner & Co., the justice of which, I suppose, is not contested, may be and likely are now barred by the statute.

After such waiver, abandonment, or neglect, whichever it may have been, on the part of Mr. Mullan of his rights and remedies, under such circumstances, during a period of from sixteen to eighteen years, it would now work great practical injustice and disturbance of what have been long acted on as settled titles to nullify the titles of these defendants. In fixing the time, courts of equity generally follow the analogy furnished by some statute of limitations. In my view it would be the statutory bar of an action of ejectment dating from the time when S. H. Mullan, deceased, knew, or must have known, that the purchaser under the void decree, and those claiming under him, were holding the property as their own.

The second point made by appellant, Carper, is that he and those claiming under him, and those under whom he claims, had actual adverse possession of said real estate for more than ten years before the institution of this suit. The appellees contend that it has been settled that in such cases the purchaser under the decree and his vendees do not take and hold a title adverse to the true owner, but take the true owner's title itself, and, being in entire privity with it, can not hold adversely; and their counsel cite *Grinnan* v. *Edwards,* 21 W. Va. 347; *Lynch* v. *Andrews,* 25 W. Va.

751; *Sturm* v. *Fleming*, 26 W. Va. 58; *Hall* v. *Hall*, 27 W. Va. 468.

In the cases of *Grinnan* v. *Edwards*, 21 W. Va. 347; *Haymond* v. *Camden*, 22 W. Va. 180, and *Sturm* v. *Fleming*, Id. 404, the general doctrine of void judgments and decrees is investigated and discussed with great learning and ability, but the point now in hand did not arise except inferentially from the discussion of the general subject, and was not decided.

*Lynch* v. *Andrews*, 25 W. Va. 751, grew out of proceedings had and the sale made in *Haymond* v. *Camden*.

In the case of *Haymond* v. *Camden*, above cited, the court, in December, 1863, had entered a decree for the sale of the tract of land of eight hundred and nineteen acres. James Lynch became the purchaser at the sale, in March, 1867. The sale was confirmed, and James Lynch soon after took possession. An appeal was taken, and in September, 1883, this Court entered a decree setting aside the sale and the decree ordering it and the decree confirming the same. The Court also held that James Lynch, the purchaser, became a party to the suit, and was bound by all the subsequent proceedings. The case was remanded, and the court below, in January, 1884, among other matters, ordered that Andrews should be restored to his possession of the land, and for that purpose awarded him a writ of possession. Thereupon Josiah W. Lynch and Peter Lynch filed their petition for an injunction, alleging that the land had been sold and conveyed to them by James Lynch, by deed of general warranty of 28th February, 1865, and that from that time they had held and still hold actual possession of the land adversely to James Lynch and all other persons, and that such adverse possession had continued for more than ten years. The injunction to the execution to the writ of possession was awarded. Andrews filed his answer, and moved to dissolve. The Circuit Court refused to dissolve the injunction, and Andrews appealed.

It will be perceived that the cause of *Haymond* v. *Camden, et al.*, was still pending, and the court now had jurisdiction, for defendants Camden and Andrews had both ap-

peared and made defence. The court held, among other things:

"(1) The rights of parties to a suit are such as are settled by the ultimate results, and are in no respect affected by intermediate orders or decrees, which are reversed or vacated before the final termination of the suit.

"(2) *Pendente lite* purchasers are bound by the decrees entered affecting the property so purchased by them, although they may not be parties to the suit.

"(4) The statute of limitations does not run in favor of a *pendente lite* purchaser. Such purchaser in possession of land so purchased will not be regarded as holding it adversely to the parties to the suit during the litigation.

"(5) The land is sold, the sale confirmed, a conveyance made to the purchaser, and he takes possession, the litigation continues, and, after the purchaser has been in actual possession for more than ten years, the decrees ordering and confirming the sale are reversed and declared void, and the sale set aside for want of jurisdiction in the court ordering the sale. * * * The possession of such purchaser under such void sale is not adverse to the owner."

SNYDER, J., delivering the opinion, says: "It is undoubtedly true that where a purchaser is in actual possession of land under a complete legal title, such as a deed purporting to convey land, he will be considered as holding adversely to all the world, including his vendor, from whom his title and possession are derived. *Core* v. *Faupel*, 24 W. Va. 238. But, while this is sound law, it is well settled that the statute of limitations has no operation upon the subject of litigation. It ceases to run at the time the litigation commences, if it has already commenced; and, if the cause of action arises during the pendency of the litigation, the statute does not commence to run until the litigation is ended." *Lynch* v. *Andrews*, 25 W. Va. 751–753.

In the case of *Sturm* v. *Fleming*, e6 W. Va. 58 (S. C.) 22 W. Va. 404 the question did not arise; the purchaser not having had possession ten years before suit was brought. In *Hall* v. *Hall*, 27 W. Va. 468, the ten years had not elapsed, and, while the party had still the right to have the cause reviewed and reversed, a bill of review was filed, and

the decree ordering and confirming the sale and the deed to the purchaser's assignee, Moses S. Hall, were set aside. See *Hall* v. *Lowther*, 22 W. Va. 570.

We are told by the appellees that the purchaser's deed is void, and therefore does not constitute color of title. But, if it shows the nature and extent of the party's claim, the fact that it is void does not prevent it from constituting color of title. This has been held in many cases, especially in cases of void tax-deeds.

In *Flanagan* v. *Grimmett*, 10 Gratt. 421 (1853) it is said: "Though a deed executed by the sheriff for land sold for taxes be defective, it is competent evidence to show, with other evidence, an actual entry under a claim of title, and a continued holding thereunder, so as to make out a title or right of entry by actual possession. Possession so taken and continued for the time prescribed (by the statutory bar) might ripen into a right of possession, and so bar the right of entry of the opposing owner."

In *Simpson* v. *Edmiston*, 23 W. Va. 675 (1884) it is held as follows: "A purchaser of land sold for delinquent taxes after he acquires a deed therefor will be deemed as holding adversely to the person in whose name the land was sold," because it shows the nature and extent of his claim, and fixes and defines the boundaries of the adverse claim and holding.

In *Swann* v. *Thayer*, 36 W. Va. 46 (14 S. E. Rep. 423) it was held as follows: "A deed purporting to convey land in fee under a void sale, made under a deed of trust by a trustee having no legal authority, gives color of title. In *Swann* v. *Young*, 36 W. Va. 57 (14 S. E. Rep. 427) the same doctrine is laid down.

The State has always retained a lien on all real estate for the taxes assessed thereon, and for delinquency in payment thereof enforces the lien by sale made by the sheriff. See Code W. Va. (1891) c. 31 *et seq.*; but, such proceedings being ministerial and *ex parte*, the deeds to the purchaser are very often utterly void and worthless, and do not protect the purchaser in possession from an action of trespass for damages, from an action of unlawful entry and detainer, an action of ejectment, or a bill in equity to set aside and declare void such deed.

But it is said this is a sale under a decree of the Mullan house and lot. The court professes to sell no other title; Bennett, the purchaser, does not profess to buy any other. It is not another distinct or different claim or title, but the very Mullan title—such estate, and no other, as was vested in Mullan, the owner, in whose name it was sold under the decree. But the same reasoning evidently applies to a sale by the sheriff for taxes; and, without exception, until recently, if it had been a sale by the sheriff to enforce the lien for taxes, the deed would, if valid, have vested in the grantee in such deed such estate as was vested in the party assessed with the taxes on account whereof the sale was made—that very title and estate, and no other. Our present tax sales have some modifications, which are not pertinent to the point here involved.

But it may be said that the tax-deed is adverse because the sale is *in invitum*, not with the consent, express or implied, of the owner in whose name it was charged for taxation. So here this was a sale *in invitum*, the owner, Mullan, not being before the court in any legal or proper sense at all, *ex parte* as to him, and for that reason, in a judicial proceeding void.

Again, it is said that it is not adverse because Bennett and those claiming under him claim and hold under the Mullan title, and not independent of it; that they hold his title, and not a new and distinct title, claiming as vendees in subordination to and under the Mullan title. As a matter of fact, according to this record, they had paid the purchase-money, obtained a conveyance in fee simple, and had gone into possession, claiming it for themselves exclusively as sole owners, and with the intent to hold it for themselves. As a matter of fact, it was taken and held with such intent.

Was there anything to prevent such possession from being such as the holder intended it to be? If the owner of the land had been before the court, if the court had had the right to act, and power over his person or property, then a different rule would apply. The purchaser would have been a party to the suit. As long as the litigation lasted, no statute of limitations could run; after it was ended, if

the sale was simply irregular, it would nevertheless stand until set aside by a proper proceeding, begun in the proper way, and within the proper time. If it was, for any cause, absolutely void, I can see no reason why his possession under his fee-simple deed should not begin to be adverse to every one, including the former owner, after the suit was ended.

But in this case there was and could be no privity between the purchaser and the former owner. We have already seen that the decree of sale and of confirmation of said deed were wholly inoperative and void. The house and lot still belonged to Mullan; these decrees neither barred nor bound any one. The deed made by the commissioners, and all claims flowing out of it, were void; and Bennett the purchaser at the sale made by its authority, found himself, without title and without redress, a trespasser, pure and simple, and liable to be so treated, sued, and turned out during ten long years. What kind of privity could such an instrument create between him and the owner? It is a misconception of the character of such legal proceedings, and the sale and deed made under it, to say that it had such validity as created any privity between the grantee in the deed and the true owner. Privity can not make the act of taking possession a real trespass, and such was his act. This contention would make the deed utterly void as to all things in the purchaser's favor, yet of sufficient validity and effect to create a privity between him and the owner, a stranger to the suit, and prevent the statute running against such stranger. It can not be said that the purchaser was guilty of any fraud; but if knowledge of the utter illegality of these proceedings be imputed to him, and that he was thus guilty of any fraud, here the record shows that full knowledge thereof was certainly brought home to Mullan, the owner of the house and lot, at least eighteen years before the bringing of this suit. During all that time these parties were in the actual occupancy of this house and lot, excluding Mullan and all others, and claiming it as their own under recorded deeds. *Prima facie* they were the owners by reason of such possession.

Under our law such possession has been for ages the standing proof of ownership. The oldest of our paper titles go back but little more than a century for their inception from the commonwealth. Yet private sales and judicial sales have been and are so constant and so frequent, the ownership of land has passed from one to another so rapidly, the various links in the paper title are so numerous, that, no matter how old or how good such paper titles may be as matter of fact, the great reliance after all, to both the seller and the buyer, is the long possession which has been held under one or more such links in the chain as color of title. That is easy to make out; every one understands it, and lies down upon it in security.

Under our law the remedies of the true owner, when dispossessed, are plain and simple. He can bring his action of unlawful entry and detainer, or if that fails, or if he desires in the first instance, he can bring his action of ejectment; but there comes a time when his remedy is barred, and, having omitted to assert his right within the time prescribed, he is deprived of it conclusively, no matter how plainly good it may have been. This policy has long been regarded as wise and salutary, necessary for the repose and security of the title of the true owners, as well as for those whose possession under a mere colorable title had its inception in trespass and wrong. See an able and learned discussion of the general doctrine of adverse possession in *Taylor* v. *Burnsides*, 1 Gratt. 165; *Core* v. *Faupel*, 24 W. Va. 238. In these and other cases the doctrine of adverse possession has been regarded as wise and politic, and has been given a liberal construction during a period of nearly fifty years. Tax deeds utterly void have been held to constitute color of title. In my view it would be unwise as a general rule, unjust in many instances, impolitic on many grounds, to seriously cripple or fritter away this doctrine of adversary possession, so long settled and acted upon, on account of a few cases of hardship growing out of the late Civil War.

We have already seen that a void tax deed is a sufficient color of title; so held in *Flanagan* v. *Grimmett*, 10 Gratt. 421 (1853); *Simpson* v. *Edmiston*, 23 W. Va. 675. In *Cooey*

v. *Porter*, 22 W.. Va. 120, SNYDER, J., in delivering the opinion of the Court, says:

"The nature or character of the title or claim under which the occupying tenant asserts his ownership is entirely immaterial. It is the fact that he claims the property as his own, and not the goodness of his title, which makes his possession adverse. His claim may be founded on a defective or even a void deed or paper, as well as upon a valid instrument, or it may be simply *in pais*, without any paper or color of title, and resting wholly upon a naked assertion of title or claim in himself, accompanied by exclusive possession."

In that case the color was a deed absolutely void. See, also, *Adams* v. *Alkire*, 20 W. Va. 480; *Shanks* v. *Lancaster*, 5 Gratt. 110.

"Where the purchaser is in possession under a complete legal title, such as a deed purporting to convey the land, he will be considered as holding adversely to all the world, including his vendor, from whom his title and possession are derived." *Core* v. *Faupel*, 24 W. Va. 238; *Bank* v. *Neal*, 28 W. Va. 744.

In the late cases of *Swann* v. *Thayer* and *Swann* v. *Young*, 36 W. Va. 46, 57 (14 S. E. Rep. 423, 426) (1892) void deeds were held to constitute color of title.

In the case of *Hewis* v. *Buntin*, 47 Ill. 397 (1868) it was held: "Where a deed purporting to convey title was executed under a decree of a court having general jurisdiction, and by a person having a power to execute the decree, such deed is color of title; and this, notwithstanding the decree may have been erroneous, or even void for want of jurisdiction."

In *Whiteside* v. *Singleton*, Meigs, 207 (1838) it was held that "seven years" possession of land under a deed, though founded on a void or voidable decree in chancery, will perfect the title of the possessor."

In *Welborn* v. *Anderson*, 37 Miss. 155 (1859) it was held "a void deed will constitute color of title."

The contrary view seems to be founded on a misapprehension of the nature of color of title as an element of adversary possession, and seems to suppose that when it is

said to be utterly void, which may be shown in any collateral proceeding, not only has the efficacy of such deed disappeared, but the paper writing itself, which, of course, is not true. The void deed as a paper writing still remains. It shows the nature of the grantor's claim; in this case an estate in fee simple, subject to the wife's contingent right of dower, for such the commissioners' deed purports to convey. It defines the extent of the claim by boundaries or some other mode of description; in this case a certain house and lot in the town of Buckhannon, describing it by reference to the two deeds of record conveying the property to Samuel H. Mullan.

In *Wright* v. *Mattison*, 18 How. 50, the deed in controversy seems to have been an Illinois tax-deed, void on its face. Daniel, J., enters into a discussion of "color of title" in general. "Upon their face the deeds purport to convey a title in fee, and, having been accepted in good faith by Gregg and wife, they show the nature and extent of their claim to the premises." And inasmuch as they show a claim in fee, which tends to negative any right in any other person, they also tended to show that his actual possession was adverse to all the world. "Hence color of title, even under a void and worthless deed, has always been received as evidence that the person in possession claims adversely to all the world." Id. 57. So it may of itself, or in connection with other evidence, tend to show other facts. It may be, and often is, a good link in a good title; or it may be, for the purposes of creating or transferring a good title legal or equitable, an utterly worthless semblance of title, which in fact is no title, yet it shows the nature and extent of the plaintiff's claim. Its chief value is to indicate the extent of the possessor's claim. See *Eye* v. *Medlar*, 82 Pa. St. 87 (1876).

Yet the nature of the claim is always material, as in this case with reference to the widow's right of dower. Among the very many judicial sales which have been made, there is reason to believe that many have been made in cases in which the court had no jurisdiction, from want of process served, void attachments, failure to file the answer by guardian *ad litem*, and other causes. In such cases, are the

purchasers and those claiming under them never to be quieted in their possessions? Does not lapse of time make such void titles good? If so, what period, if not that one prescribed by the statute of limitations?

The suit in this case was begun during the late Civil War, but the decree to sell, the sale, and the decree of confirmation were not made until more than four years after the war was ended, when the former owner, being frequently in the town and county where the property was situated and the suit was brought, must have had knowledge of it, for the purchaser's deed was placed upon record, and actual possession of the property was taken, and there was certainly no impediment in the way of asserting his right after 1872. There was no concealment on the part of the purchaser. He had nothing to do with bringing the suit, and if the fraud or fault of others is to be imputed to him as matter of law, because he was a purchaser under a void decree, such imputed fraud was well known to the former owner for more than ten years before the bringing of this suit; or if the law created any privity by reason of such purchase, and the possession taken and held in subordination to the title of the real owner, yet there was a clear, positive, and continued disclaimer of such title, and assertion of his own adverse right brought home to the owner, during a period of ten years and more, by many acts which were in their nature unequivocal, and not capable of any other meaning, such as the various sales in fee simple, accompanied by recordation of deeds and transfers of possession.

I think, therefore, that these two decrees, one of sale, the other of confirmation, were wholly inoperative and void, and, being void, are in legal effect no decrees;—that by the sale and commissioners' deed under it no right of defendant Mullan was divested, and no right by Bennett, the purchaser, was thereby obtained; for, the decrees being themselves worthless, the proceedings founded on them, including the commissioners' deed, are equally worthless. They neither bind nor bar any one. All acts performed and all claims flowing out of them are void;—that Bennett the purchaser at the sale, by their authority found himself with-

out title and without redress. "No resulting equity in the hands of third persons, and no power residing in any legislative or other department, of government, can invest it with any power or validity, and it may be assailed in any collateral proceeding." WOODS, J., in *Grinnan* v. *Edwards*, 21 W. Va. 347–364, citing *Neale* v. *Utz*, 75 Va. 480 ; Freem. Judgm. (4th Ed.) § 117. See cases cited by Freeman, *supra*, § 117.

But I also think that this commissioners' deed, dated December 14, 1875, duly recorded, and also proved and admitted for the purpose of this case, constitutes a sufficient color of title for Bennett and those claiming under him. It shows the nature and extent of his claim ; and that he and those claiming under him took possession of and held the house and lot in question as trespassers, in contemplation of law, can not be questioned. That they took and held it with the intention, as matter of fact, of holding it as their own in fee simple, exclusively for themselves, and adversely to all the world except the wife, is equally beyond all question ; and that it has been so held continuously for more than ten years before the death of S. H. Mullan, and before the institution of this suit, is also made to appear beyond question. The rights of the heirs of S. H. Mullan are therefore extinguished.

But the question remains as to the right of the widow, Mrs. Mullan, to dower. If the case is put upon the ground of abandonment and acquiescence, then there can be no question that the widow is not precluded from her dower. Upon the ground of adverse possession the question is not free from difficulty.

Our statute on the subject of dower on the point involved is as follows :

"A widow shall be endowed of one third of all the real estate whereof her husband, or any other to his use, was, at any time during coverture, seised on an estate of inheritance, unless her right to such dower shall have been lawfully barred or relinquished." Code, c. 65, s. 1.

"When a husband, or any other to his use, shall have been entitled to a right of entry or action in any land, and his widow would be entitled to dower out of the same, if the

husband or such other had recovered possession thereof, she shall be entitled to such dower, although there shall have been no such recovery of possession." *Id.* s. 2.

"No widow shall be precluded from her dower by reason of the real estate whereof she claims dower having been recovered from her husband by a judgment rendered by default or collusion, if she would have been entitled to dower therein had there been no such judgment." *Id.* s. 13.

During coverture the wife can not estop herself from claiming dower except by privy examination as to execution of deed of grant—a relinquishment in the mode prescribed by the statute. "But after her husband's death she is *sui juris*, and may lose her estate by estoppel, just as any other person may." See 5 Am. & Eng. Enc. Law. 920, and cases cited.

In my opinion, the nature of the purchaser's color of title shows that his possession was not intended to be adverse to the wife's inchoate right of dower, but to all others. The deed of the commissioners and the void decrees and proceedings in the chancery suit show this; nor is there any act or declaration on the part of those in possession under the void deed repugnant to or inconsistant with such right of the wife. In this case the husband died in August, 1887, and this suit was brought in January, 1888, so that but a few months elapsed from the death of her husband to the bringing of her suit. Therefore there has not been time enough to bar since she became *sui juris;* and defendants' claim and color of title being not repugnant to, but consistent with, the wife's contingent right of dower, as appears from the nature of such color of title, according to its own showing, we are of opinion that the widow is not precluded from her dower.

The decree complained of must be reversed, except so far as it relates to the assignment of dower to the widow ; and the cause is remanded, with directions to proceed with such assignment, and to settle such equities between the defendants resulting therefrom as may be called for and justified by the pleadings and proofs.

REVERSED IN PART.   REMANDED.