## BARTLETT v. AMBROSE et al.

(Circuit Court of Appeals, Fourth Circuit. February 11, 1897.)

No. 189.

1. TAX DEEDS—LACHES.

Laches does not grow out of the mere passage of time, but out of the inequity of permitting a claim to be enforced, arising from some change in the condition or relations of the property or parties. Accordingly, *held*, that a nonresident owner of wild lands, who had reason to suppose the taxes thereon were paid, and had delayed, for a period beyond that of the statute of limitations, to assert his claims against one who had held the lands under a tax deed, without improving them, might not be guilty of laches, although he would be barred by the statute of limitations.

2. SAME—COLOR OF TITLE—ADVERSE POSSESSION.

A tax deed, though void and based upon a void sale, if not showing invalidity on its face, is a sufficient color of title to be a foundation for adverse possession.

Appeal from the Circuit Court of the United States for the District of West Virginia.

Thomas E. Davis and M. F. Stiles, for appellant.
W. P. Hubbard, R. F. Ayers, and H. P. Camden, for appellees.

Before SIMONTON, Circuit Judge, and MORRIS and BRAWLEY, District Judges.

SIMONTON, Circuit Judge. This case comes up on appeal from the circuit court of the United States for the district of West Virginia, sitting in equity. The bill of complaint was filed on 15th October, 1895, to remove a cloud on the title of real estate. The facts are these: Frederick Fickey, a resident of Baltimore, had a

controversy with one Cyrus Hall with regard to land situate in the county of Ritchie, W. Va. He employed, as his attorney to conduct the controversy, John R. Kenly, a lawyer residing in the same city of Baltimore. Kenly was to receive one-fourth of the land recovered as his fee. On 4th March, 1872, the suit was compromised, and Hall conveyed to Fickey 468 acres of the land in dispute. Thereupon, pursuant to his agreement, Fickey conveyed to Kenly, by deed dated 19th April, 1872, 117 acres of the land so conveyed to him by Hall,—just one-fourth. The two deeds, that of Hall to Fickey, and that of Fickey to Kenly, were duly admitted to record in the same year, 1872. Both deeds conveyed the land, in each described by courses, distances, and monuments. It is said that the actual amount of land conveyed by the description in Kenly's deed was 165 acres. This is not specially important. Kenly owned no other parcel of land in Ritchie county. The land of Kenly was entered on the tax book of Ritchie county in the name of John R. Kenly as 177 acres, and was so charged with taxes for the years 1873, 1874. The taxes for 1874 were not paid, and the land was returned delinquent. On 11th October, 1875, 34 acres of this land was sold by the sheriff to Thomas Reeves, for the purpose of paying the taxes due for 1874. Reeves soon thereafter assigned his purchase to C. Ambrose. Ambrose, on 26th December, 1876, obtained a deed for these 34 acres from the clerk of the county court, and on 11th May, 1878, sold and conveyed the 34 acres to Richard Wanless, a defendant below, and one of the appellees here. Notwithstanding this sale of a part of the Kenly tract, it was still carried on the land books as 177 acres, and for the years 1875, 1876, 1877, and 1878 was charged with taxes in the name of John R. Kenly. It was again returned delinquent, and on 14th October, 1879, the entire tract of 177 acres was sold by the sheriff to C. T. Harrison and the same Richard Wanless, in order to pay these taxes. On 27th April, 1880, Wanless redeemed the 34 acres from Harrison, taking a redemption receipt, which, however, he failed to record. On 18th February, 1881, having purchased Harrison's interest in the land, he obtained a deed from the clerk of the county court for the whole tract entered in the name of Kenly, Harrison joining in the deed. When Wanless purchased the 34-acre tract, and the whole tract charged in Kenly's name, he was the owner of coterminous tracts of land, and was then and at the commencement of this suit in actual possession of them. In June, 1880, after his last purchase, Wanless extended a fence on his adjacent lands across Elm run, which divided them from the Kenly tract. This extension was three rods in length, and was closed with a cross fence. The inclosure embraced 35 acres of his adjacent lands, and three-fourths of an acre of the Kenly land, and he has used this inclosure every year since then for pasture and grazing purposes. He had the Kenly tract entered in his own name on the land books, has paid the taxes annually thereon, claims to have exercised ownership over the whole tract by cutting and selling the timber on it, and in 1890 leased the land for oil purposes

to one Gracy, who assigned the lease to the other appellees, known as the Cairo Oil Company. In 1894 this company began operations, and were drilling a well when this suit began. In the meantime the whole tract of 463 acres, conveyed by Hall to Fickey, was placed by the assessor in 1873 on the land books in the name of Fickey, and taxes were assessed thereon. This was continued from that time to the year 1889, all the 463 acres being entered each year, except in the years 1883 and 1884, when the land was put down as 351 acres. Fickey paid the taxes each year in his own name on the whole tract, including the 117 acres he had conveyed to Kenly. He had an agent looking after his own interests, and not expressly charged, however, with Kenly's interest. In 1890 Fickey directed that the 117 acres should be deducted from the lands entered in his name. In 1891 Kenly died. No tax was paid by him or his representatives after that on these 117 acres. In December, 1894, the heirs at law of Kenly conveyed the tract of 117 acres to the complainant (appellant here). In 1895 appellant posted the land, claiming as owner, and soon after filed this bill to remove the cloud from his title. A temporary injunction was granted. Answers were filed. The cause was heard on its merits. The injunction was dissolved, and the bill dismissed. The cause is here on errors assigned. These present important questions: Has the complainant by laches deprived himself of the right to relief at the hands of a court of equity? Has the complainant forfeited all title to the land because of its omission from the land books? Are the tax deeds under which the defendants claim title valid? Has the claim of the defendants ripened into title by virtue of adverse possession? Is the Cairo Oil Company protected in its possession under the special laws of West Virginia? These questions have been argued before us.

### Laches.

Whether a party has lost his right to come into a court of equity does not depend upon the lapse of time, but upon the question whether, during this time, such changes and circumstances have taken place as made it inequitable to recognize the claim of the party asserting title.

In Galliher v. Cadwell, 145 U. S. 368, 12 Sup. Ct. 873, the court says:

"Laches does not, like limitation, grow out of the mere passage of time. It is founded upon the inequity of permitting the claim to be enforced, an inequity founded upon some change in the condition or relations of the property or parties."

So, also, in Alsop v. Riker, 155 U. S., at page 461, 15 Sup. Ct., at page 167, we find the doctrine thus expressed:

"Equity, in the exercise of its inherent power to do justice between the parties, will, when justice demands it, refuse relief even if the time elapsed without suit is less than that prescribed by the statute of limitations. [Quoting many authorities.] The length of time during which a party neglects the assertion of his rights, which must pass in order to show laches, varies with the peculiar circumstances of each case, and is not, like the matter of limitations, subject to an arbitrary rule. It is an equitable defense, controlled by equitable considerations;

and the lapse of time must be so great, and the relations of the defendant to these rights such, that it would be inequitable to permit the plaintiff now to assert them."

See, also, Gildersleeve v. Mining Co., 161 U. S. 578, 16 Sup. Ct. 663.

In this case these equitable considerations do not exist. The lands in question were what are known as wild lands,—lands not in cultivation. The appellant has very recently acquired his title. Kenly, under whom he claims, was a nonresident of the state, and up to 1890 the taxes on this land which he claimed had been paid regularly by his grantor. Wanless got the lands at a tax sale, which itself was a strong intimation of the existence of an adverse title. No improvements have been made on the lands, and no expenditure of money thereon, except by the Cairo Oil Company, whose rights stand on a different footing from those of the other defendants. Wanless purchased at tax sales. Upon the deeds obtained from those sales, and upon his possession, he must stand or fall. · He has no special claim upon the protection of a court of equity. A crucial question in the case, therefore, is that made under the statute of limitations. But, although statutes of limitations strictly do not bind courts of equity, they will use the analogy of the statute, and will recognize rights acquired thereunder.

### Are the Defendants Protected by the Statutory Bar?

Wanless obtained, in 1881, a deed for a whole tract of 177 acres, described by metes and bounds, and placed that deed on record. Assuming for the sake of argument that the tax sale was void, and the deed under it void also, can this operate as color of title?

In Pillow v. Roberts, 13 How. 477, the supreme court says:

"Statutes of limitation are founded on sound policy. They are statutes of repose, and should not be evaded by a forced construction. The possession which is protected by them must be adverse and hostile to that of the true owner. It is not necessary that he who claims their protection should have a good title, or any title but possession. A wrongful possession, obtained by a forcible ouster of the lawful owner, will amount to a disseisin, and the statute will protect the disseisor. One who enters upon a vacant possession, claiming for himself upon any pretense or color of title, is equally protected with the forcible disseisor. Statutes of limitation would be of little use if they protected those only who could otherwise show an indefeasible title to the land. Hence color of title, even under a void and worthless deed, has always been received as evidence that the person in possession claims for himself, and, of course, adversely to all the world. A person in possession of land, clearing, improving, and building on it, and receiving the profits to his own use, under a claim of title, is not bound to show a forcible ouster of the true owner in order to evade the presumption that his possession is not hostile or adverse to him. Color of title is received in evidence for the purpose of showing the possession to be adverse, and it is difficult to apprehend why evidence offered and competent to prove that fact should be rejected till the fact is otherwise proven."

And commenting on a law of the state of Arkansas, creating a bar as to tax titles after five years, the court add:

"In order to entitle the defendant to set up the bar of this statute, after five years' adverse possession, he had only to show that he and those under whom he claimed held under a deed from a collector of the revenue of lands sold for the

nonpayment of taxes. He was not bound to show that all the requisitions of the law had been complied with in order to make the deed a valid and indefeasible conveyance to the title. If the court should require such proof before a defendant could have the benefit of this law, it would require him to show that he had no need of the protection of the statute before he could be entitled to it. Such a construction would annul the act altogether, which was evidently intended to save the defendant from the difficulty, after such a length of time of showing the validity of his tax title."

This case was affirmed in Wright v. Mattison, 18 How., at page 57. Nor is this doctrine overruled in Redfield v. Parks, 132 U. S. 239, 10 Sup. Ct. 83. In that case plaintiff claimed under a patent from the United States, dated 15th April, 1875. The defendant relied on his possession under color of title of a tax deed executed 11th August, 1871, upon a sale for taxes for the year 1868. The deed was executed for default of payment of taxes on land, the title to which land was in the United States, and so not liable to the tax laws of the state. The grounds of decision on this point are thus stated:

"But neither in a separate suit in a federal court, nor in an answer to an action of ejectment in a state court, can the mere occupation of the demanded premises, by plaintiff's or defendant's, for the period prescribed by the statute of limitations of the state, be held to constitute a sufficient equity in their favor to control the legal title subsequently conveyed by the patent of the United States, without trenching upon the power of congress in the disposition of the public lands. That power cannot be defeated or obstructed by any occupation of the premises before the issue of the patent under state legislation, in whatever forum or tribunal such occupation be asserted." Quoting Gibson v. Chouteau, 13 Wall. 101; Rector v. Ashley, 6 Wall. 142; U. S. v. Thompson, 98 U. S. 486.

But the defendant in that case also set up in bar a short statute of limitation intended to protect tax titles. As to this, the court would not treat the tax deed as color of title, because on its face it showed that it was void. In this record it does not appear that the tax deed on its face showed invalidity.

In Bryant v. Groves, 24 S. E. 608, a decision by the supreme court of West Virginia, it is said to be settled law that a tax deed, though void, constitutes good color of title.

In Mullan's Adm'r v. Carper, 16 S. E. 527, 37 W. Va. 215, it is said that: "Any written instrument, however defective or imperfect, and no matter from what cause invalid, purporting to sell, transfer, or convey title to land which shows the nature and extent of the parties' claim, constitutes color of title, within the meaning of the law of adverse possession." The court add, "This has been held in many cases, especially in cases of void tax deeds," and then quotes and discusses the cases.

This principle is well established by decisions of the supreme court. "Color of title is that which in appearance is title, but which in reality is no title. No exclusive importance is to be attached to the invalidity of a colorable or apparent title if the entry or claim has been made in good faith." Wright v. Mattison, 18 How. 50; Beaver v. Taylor, 1 Wall. 637. Whenever an instrument, by apt words of transfer from grantor to grantee, whether such grantor act under the authority of judicial proceedings or other-

wise, in form passes what purports to be the title, it gives color of title. Even if invalid, possession under it for the period prescribed by statute bars the right of the true owner. It is an absolute defense to the action of ejectment, and a suit in equity brought after that period will not be entertained, as it is founded on a stale claim. Hall v. Law, 102 U. S. 461. An adverse possession under a deed for land previously granted is sufficient to give title, although the deed was void. Green v. Neal, 6 Pet. 291. In Cameron v. U. S., 148 U. S. 301, 13 Sup. Ct. 595, many of these cases are recognized and affirmed.

Richard Wanless, under whom the appellees claim, obtained a deed of conveyance in fee for the whole 177 acres, February 18, 1881, and it was put on record, the deed describing the land by metes and bounds. Before that time, but after his purchase at the tax sale, he had extended his fence across Elm run, which separated this land from the contiguous lands some three rods, and inclosed the ends of the fence. He used the lands thus inclosed for his own purposes. This he did in his own right, without permission of any one, asserting title. The land was in his exclusive possession. It is true that Fickey had a man by the name of Hewitt on his land. But the record nowhere shows any agreement between him and Kenly that he or his agents should protect Kenly's possession, nor any instructions or agreement by Kenly with Hewitt that the latter should hold possession for him. If we can infer from the action of the parties, it could easily be concluded that Fickey had not assumed any such office. His first act on getting title to his land was at once to ascertain and segregate the interest of Kenly in it by the execution of a conveyance to him in fee of his share therein. Nor does the record show that Hewitt really acted for Kenly. Wanless, besides inclosing and occupying this piece of land, under color of title of the whole tract, sold timber to one Wilson on that part of the tract outside of the fence, on the boundary line of Fickey, with the knowledge of Fickey and of his agreement. In 1890 he sold timber on the rest of the tract to Dick and Donahue, who were occupied for nine months in getting the timber out. In the same year he leased the land for oil purposes. These were acts of ownership, not fugitive trespasses. His testimony shows that Wanless, having obtained his deed, asserted title at once in the most open and public way by inclosing for his sole use a part of the land so held by him, and by disposing of the timber on the rest. He held from February, 1881, until July, 1895. The statutory bar is 10 years. This will bar relief in equity. Elmendorf v. Taylor, 10 Wheat. 152; Godden v. Kimmell, 99 U. S. 201; Hall v. Law, supra.

The other questions in the case are full of interest, but the result reached renders the consideration of them unnecessary. The decree of the circuit court is affirmed, with costs, without prejudice to any action at law the complainant may be advised to bring.