## HANCHETT v. BLAIR.

(Circuit Court of Appeals, Ninth Circuit. February 5, 1900.)

### No. 546.

1. EQUITY PLEADING—DENIAL FOR WANT OF KNOWLEDGE OR INFORMATION.

A denial expressly based on want of knowledge, information, or belief, although contained in a sworn answer, is not evidence in the case, and its only effect is to require the complainant to make some proof on the point.

2. JURISDICTION OF FEDERAL COURT—PROOF OF CITIZENSHIP.

Proof that a complainant has resided in the same place for 70 years, and that he owns a residence there, in which he maintains his business office, sufficiently establishes his citizenship in the state in which such place is situated, for jurisdictional purposes, as against a denial made only for want of knowledge, information, or belief.

3. SAME—PRESUMPTION—STOCKHOLDER IN CORPORATION.

The rule that the stockholders of a corporation will be conclusively presumed to be citizens of the state in which it is incorporated, for the purpose of fixing the citizenship of the corporation for jurisdictional purposes in the federal courts, does not extend beyond such purpose, and there is no presumption that an individual who sues a corporation is a citizen of the same state, because he is a stockholder in such corporation.

4. CORPORATIONS—MORTGAGE TO STOCKHOLDER—VALIDITY.

The fact that a person to whom a mortgage was executed by a corporation was the principal stockholder in such corporation does not render the mortgage invalid, and it cannot be impeached or its foreclosure resisted on that ground by one who contracted with the corporation for the purchase of the mortgaged property years after its execution, and while it was of record.

5. LIMITATION—RIGHT TO PLEAD—FORECLOSURE OF MORTGAGE.

The defense of limitation is a personal one, which may be pleaded by the debtor or waived; and, when a corporation which has given a mortgage does not make such defense to a suit for foreclosure, it cannot be pleaded by one to whom the corporation has contracted to sell the property, but who has not been vested with either the full equitable title or possession under his contract.

6. SAME—FEDERAL COURTS—FOLLOWING STATE STATUTE.

The federal courts will follow the statutes of limitation of the states, as rules of decision, in cases where they apply, and in such cases the law of the forum will govern.

7. SAME—NEVADA STATUTE—FOREIGN CORPORATIONS.

Under the statute of limitations of Nevada (Gen. St. Nev. § 3651), which excludes from the computation of the time within which an action must be brought the time the debtor shall be absent from the state, a foreign corporation cannot plead limitation as a bar to a suit to foreclose a mortgage on property situated in the state, executed to secure an indebtedness of the corporation, since, having been out of the state, the debt is not barred.

8. EQUITY—LACHES.

Laches which will bar a suit in equity depends on the peculiar circumstances of each case, and where the complainant's inaction does not appear to have worked injury to any one, and it is not shown that there was any occasion for more promptly asserting his rights, the defense will not prevail.

Appeal from the Circuit Court of the United States for the District of Nevada.

This case comes before this court upon an appeal by one of the defendants in the court below from a decree of foreclosure of a mortgage in favor of the

100 F.—52

complainant (appellee here). In the bill of complaint the complainant, John I. Blair, was alleged to be a citizen of the state of New Jersey; the defendant Silver Peak Mines, a corporation organized and existing under and by virtue of the laws of the state of New York; and the defendant L. J. Hanchett, a citizen of the state of California. The material facts and proceedings in the controversy are the following: The Silver Peak Mines, a corporation, made, executed, and delivered to John I. Blair, appellee, on the 1st day of October, 1879, a mortgage on real estate and mining properties situated in the state of Nevada, and belonging to said corporation, to secure the payment to said Blair of seven bonds of said corporation issued on the same date, and aggregating the sum of $204,205.73, bearing interest at the rate of 10 per cent. per annum, and maturing at various dates,—the last on October 1, 1883. The bonds and mortgage were executed in the state of New York, the domicile of the said corporation; and the mortgage was recorded in the office of the county recorder of Esmeralda county, state of Nevada, on the 19th day of May, 1880. Payments have been made upon this indebtedness amounting to $21,541.78; the last credit being $3,000, on the 21st day of April, 1896. On July 21, 1897, Blair brought suit in the circuit court of the United States for the district of Nevada to foreclose the said mortgage. Hanchett was made a party to the suit by the following averment: "That the defendant L. J. Hanchett has, or claims to have, some interest in or claim upon the said premises, or some part thereof, which claim or interest is unknown to this complainant, and which interest or claim is subsequent to, and subject to the lien of, this complainant's mortgage." The Silver Peak Mines confessed judgment on this bill, but the defendant Hanchett demurred to the complaint on several grounds. The court overruled the demurrer. Blair v. Silver Peak Mines (C. C.) 84 Fed. 737. And on June 6, 1898, Hanchett appeared and answered in the case. This answer put in issue the citizenship and residence of the complainant, Blair, and denied that the controversy was between citizens and residents of different states. The indebtedness, execution and delivery of the notes, and allegations of their non-payment, were also put in issue. It was admitted that Hanchett claimed an interest in the premises described in the mortgage, but denied that his interest was subsequent to, or subject to the lien of, said mortgage. In this connection the answer alleged that the complainant, Blair, was the owner of all the capital stock of the Silver Peak Mines, save a nominal number of shares thereof, standing in the names of his servants and agents for the purpose of permitting them to be officers thereof; that the said Blair caused said corporation, Silver Peak Mines, to be formed, and the property described in said alleged mortgage to be conveyed to said corporation, for convenience in handling said property; that the said property really belonged to said Blair at all times, and that the affairs of said corporation were at all times directed by said Blair; that on or about, and prior to, September 7, 1894, said Blair maintained and represented to said defendant Hanchett that the said corporation was the owner, unincumbered, in fee simple, of the mining property, real and personal, described in said mortgage; and that, relying upon such representations, Hanchett made and entered into a contract with said corporation on the 7th day of September, 1894, for the sale to Hanchett of said mining property. This contract provided that the said Hanchett should have possession of the said property on or before the 1st day of October, 1894, and to have full control thereof until the 31st day of December, 1895, with license to explore and work said mining property for the development thereof; the proceeds derived from minerals extracted in such work to be divided between the parties in certain proportions. It further provided that at any time prior to December 31, 1895, the said Hanchett might elect to purchase all of said property at and for the sum of $500,000, in manner therein mentioned; and afterwards, on November 12, 1895, this option to purchase was extended by the said corporation to said Hanchett until August 12, 1896. The answer then alleged that prior to August 12, 1896, the said Hanchett did exercise said option, and notified said corporation thereof, and offered to pay the full amount of the purchase price therefor, upon the execution by said corporation of good and sufficient conveyances of said property to Hanchett, and that said corporation failed and refused, and ever since has failed and refused, so to do. It further alleged that a suit in equity between said corporation and said Hanchett was then

pending and undetermined in said circuit court, wherein Hanchett had filed and was prosecuting a cross bill to obtain specific performance of the said contracts: that after the filing of said cross bill the said Blair commenced the suit in which the answer was filed, for the purpose of devesting the said corporation of the legal title to said property, and of preventing the defendant Hanchett from securing specific performance of said contract. For a further and separate defense, the answer alleged the complainant's (Blair's) alleged cause of action was barred by time and laches, and in support of this allegation specifically relied upon the statutes of the state of Nevada, where the property is situated, and of the state of New York, where the bonds and mortgage sued upon were executed. A general replication to this answer was filed by the complainant, and the cause was thereafter set for trial on November 21, 1898. The defendant Hanchett was not represented at the trial (it is claimed, by reason of a misunderstanding), and the case was submitted upon the pleadings and testimony previously taken by deposition. Judgment and decree of foreclosure were entered in favor of the complainant, Blair, for the sum of $573,978.71, principal and interest found to be then due upon said bonds and mortgage. Thereafter, on December 5, 1898, the defendant Hanchett filed a petition for rehearing. The petition was argued before the court, and a rehearing denied, whereupon the present appeal was taken.

P. Reddy, J. C. Campbell, W. H. Metson, and George W. Merrill, for appellant.

Rush Taggart, Frank E. Murphy, and M. A. Murphy, for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The assignments of error are 17 in number, 10 of which relate to the jurisdiction of the circuit court; 3 to the bar of the statute of limitations, and the laches of the complainant in asserting his claim; 2 to the right of complainant to maintain foreclosure proceedings against a corporation in which he owned or controlled all the capital stock; 1 to the sufficiency of the proofs to establish the execution, delivery, and nonpayment of the bonds and mortgage upon which the action is founded; and 1 to the equitable right of the defendant to a decree in his favor upon the merits.

The question of jurisdiction is raised by the appellant upon the ground that the diverse citizenship of the complainant, Blair, and the defendant corporation was not proven; and he contends that, as there was no other ground than that of diverse citizenship on which to base the jurisdiction of the circuit court, the court erred in holding that it had jurisdiction of the suit. It is alleged in the amended bill of complaint "that the complainant, John I. Blair, is now, and during all the time and times hereinafter mentioned was, and is, a resident and citizen of Blairstown, New Jersey, and not a citizen or resident of the state of Nevada; that the defendant Silver Peak Mines, a corporation, is now, and during all the time and times hereinafter mentioned was, and is, a corporation duly organized and existing under and by virtue of the laws of the state of New York, having its principal place of business at No. 11 Pine street, city, county, and state of New York, and owning property and doing business at Silver Peak, Esmeralda county, state of Nevada, under its corporate name, Silver Peak Mines; that

L. J. Hanchett is a citizen and resident of the city of Sacramento, state of California." The defendant Hanchett did not raise an issue as to the jurisdiction of the court by a plea in abatement, but in his answer he admits the citizenship of the defendant corporation and himself to be as alleged in the complaint, and, as to the complainant, alleges "that he has no knowledge, information, or belief sufficient to enable him to answer the allegation of said amended bill, * * * and, placing his denial upon that ground, denies that the complainant at any of said times was, or now is, a resident or citizen of Blairstown, N. J., or a citizen of New Jersey at all." It was contended in the court below by the defendant Hanchett that, inasmuch as the complainant did not waive an answer under oath, and Hanchett having answered under oath that complainant was not a citizen of the state of New Jersey, the complainant must, under equity rule 41, produce two witnesses, or one witness and very strong circumstances, corroborating him, in order to overthrow the allegation in defendant's answer. But this rule, as was said by the trial judge, can only be invoked where there is a direct, positive, and unequivocal denial in the answer, and has no application to a denial made without any knowledge, information, or belief as to the facts. The only effect of such a denial is to compel the complainant to make proof upon the point. In Dutilh v. Coursault, 5 Cranch, C. C. 349, Fed. Cas. No. 4,206, it was held that the answer of a defendant in chancery, who has no personal knowledge of the facts he states, and whose conscience cannot be affected thereby, is not evidence in the cause, although responsive to the allegations of the bill. The only effect of such an answer is to present an issue, and put the plaintiff to the proof of his allegations. In the present case the defendant does not pretend to have any personal knowledge as to the residence and citizenship of the complainant, but distinctly avers that he has no knowledge, information, or belief upon the subject. After such an averment, his denial that the complainant is a citizen or resident of the state of New Jersey amounts to nothing as evidence, and is an unnecessary denial to place in issue the allegation of the bill. This form of raising an issue is borrowed from code pleading, and properly has no place in equity practice. The fact that the defendant has no knowledge, information, or belief concerning the matter alleged in the bill of complaint simply requires that the defendant shall say so in his answer, and that is sufficient to compel the complainant to furnish proof in support of the allegation. In Brown v. Pierce, 7 Wall. 205, 19 L. Ed. 134, the bill of complaint alleged title to and possession of certain lands in Nebraska, which the complainant had conveyed to the defendant Pierce while under duress; that Morton, one of the defendants, claimed an interest in the premises by virtue of a judgment lien; and that Weston, another defendant, made some claim. The prayer of the bill was that the deed to Pierce be declared void, and that Pierce be decreed to reconvey, and for general relief. The bill was taken pro confesso as to all the defendants except Morton, who answered, stating that he had no knowledge or information

about the facts alleged in the bill, but stated that he was a judgment creditor of the grantee, Pierce, and that his judgment was a lien upon the land in controversy. The question raised in that case was not whether the defendant's denial of knowledge or information could be considered as evidence in his favor, but whether it did not in fact admit the allegations of the bill of complaint. The court said:

"Authorities are not wanting to the effect that all matters well alleged in the bill of complaint, which the answer neither denies nor avoids, are admitted; but the better opinion is the other way, as the sixty-first rule adopted by this court provides that, if no exception thereto shall be filed within the period therein prescribed, the answer shall be deemed and taken to be sufficient. Material allegations in the bill of complaint ought to be answered and admitted, or denied, if the facts are within the knowledge of the respondent; and, if not, he ought to state what his belief is upon the subject, if he has any, and if he has none, and cannot form any, he ought to say so, and call on the complainant for proof of the alleged facts, or waive that branch of the controversy; but the clear weight of authority is that a mere statement by the respondent in his answer, as in this case, that he has no knowledge that the fact is as stated, without any answer as to his belief concerning it, is not such an admission as is to be received as full evidence of the fact. Such an answer does not make it necessary for the complainant to introduce more than one witness to overcome the defense, and the well-known omissions and defects of such an answer may have some tendency to prove the allegations of the bill of complaint, but they are not such an admission of the same as will constitute a sufficient foundation for a decree upon the merits."

Under the doctrine of that case the question in the present case is how far the omission of the answer to make a specific denial as to the citizenship of the complainant may be taken as tending to prove the allegations of the bill of complaint. Perhaps on a question of jurisdiction such an omission ought not to have very great weight, since it is always incumbent upon a United States court to be satisfied that its jurisdiction has been rightfully invoked. But certainly any proof that establishes the fact should be sufficient. Examining the testimony in the case at bar in this regard, it is found that at the time of the bringing of the suit, and for a period of 70 years prior thereto, complainant was, and had been, a resident of Blairstown, in the state of New Jersey; that he owned property there and transacted business there; that the house in which he resided was used by him as a business office and as a dwelling. The supreme court of the United States, in Anderson v. Watt, 138 U. S. 695, 11 Sup. Ct. 449, 35 L. Ed. 1078, has declared that two things are required to constitute citizenship of a state, in relation to the judiciary act: "First, residence within such state; and, second, an intention that such residence shall be permanent." Has not the complainant complied with these requirements? Is not a continuous residence of 70 years in one place, and the maintaining of one's business office in connection with that residence, the best possible evidence of such residence, and intention that it shall be permanent? "There may be evidence arising from circumstances stronger than the testimony of any single witness." Clarke's Ex'rs v. Van Riemsdyk, 9 Cranch, 153, 160, 3 L. Ed. 690. The only act wanting to constitute undeniable citizenship, from every standpoint, is the exercise of the right of

suffrage. That the complainant was entitled to exercise this right, cannot be gainsaid. The evidence is silent as to his act in this regard, but, as is said in Shelton v. Tiffin, 6 How. 163, 185, 12 L. Ed. 397, "acquiring a .right of suffrage, accompanied by acts which show a permanent location, unexplained, may be sufficient."

It would appear from the foregoing that the citizenship of the complainant, as alleged in the bill of complaint, was sufficiently established by the proofs. But the appellant further attacks the allegation of diverse citizenship upon the ground that the evidence disclosed the fact that the complainant is a stockholder of the defendant corporation, and must therefore be presumed to be a citizen of the same state as the corporation. It is claimed that authority for this doctrine is found in the case of Railroad Co. v. Letson, 2 How. 497, 11 L. Ed. 353; in Railroad Co. v. Wheeler, 1 Black, 286, 296, 17 L. Ed. 130; and in Shaw v. Mining Co., 145 U. S. 444, 451, 12 Sup. Ct. 935, 36 L. Ed. 768. The question under consideration in those cases was not the citizenship of individuals, but the status of a corporation under the constitution and laws of the United States relating to jurisdiction of circuit courts over controversies between citizens of different states. It was conceded that a corporation was not a citizen, but courts had in certain cases recognized the real persons who composed the corporation, and hence, for the purpose of jurisdiction, the supreme court would consider a corporation created by the laws of a state as an organization similar to a partnership composed of individuals having citizenship; and thus it followed that if all the members of a corporation were citizens of one state, and the party on the other side was a citizen of a different state, the court had jurisdiction. But another difficulty arose. There were many cases of large corporations, where the members or stockholders were citizens of different states, and sometimes of foreign countries; and in such cases, the legal entity of the corporation not being recognized, the suit was necessarily between the individual members of such corporation and the opposing party. With the rapidly growing number of corporations, however, and the increasing volume of business transacted by means of corporate association, with interests extending, not only through many states, but over the entire world, and the holdings of stock naturally scattered, it became apparent that the effort to bring individual members, either personally or by representation, into the courts, would result in the most cumbersome and tedious litigation, with unnecessary annoyance to the stockholders, and in some instances accomplish the final defeat of the jurisdiction of the court, when based upon the lack of diverse citizenship between some of the members of the corporation on one side and parties on the other side of the controversy. To meet this difficulty the supreme court determined that, "where a corporation is created by the laws of a state, the legal presumption is that its members are citizens of the state in which alone the corporate body has a legal existence." It was further determined "that a suit by or against a corporation in its corporate name must be presumed to be a suit by or against citizens of the state which created the corporate body, and that no averment or evidence to

the contrary is admissible for the purpose of withdrawing the suit from the jurisdiction of a court of the United States." Railroad Co. v. Wheeler, supra. These presumptions preserved the jurisdiction of the United States courts over corporations in accordance with the evident spirit and purpose of the constitution, but such presumptions had no relation to the citizenship of individuals as parties to a controversy in their own right, and it would manifestly be an unauthorized extension of their scope and effect to so construe the decisions of the supreme court. It follows that there is no legal presumption that the individual complainant who is also a stockholder of the defendant corporation is a citizen of the same state as the corporation.

The proofs of the validity of the mortgage, and the indebtedness of the corporation thereunder to the complainant, are denied by the appellant; and he not only claims that complainant is estopped, because of his ownership of the majority of the stock of said corporation, and by reason of certain alleged conduct and representations, from enforcing the mortgage against appellant, but charges that complainant and the officers of said corporation are in collusion in the prosecution of this suit, in fraud of appellant's rights. There does not appear to have been any fraud in the execution of the mortgage. It is in the usual form, properly executed and certified, and duly recorded. The indebtedness acknowledged therein has never been denied or repudiated by the corporation, and it is not shown that the mortgage debt has ever been paid. The complainant was not a stockholder of record at the time of the execution of the mortgage to him by the defendant corporation, and was apparently entitled to loan money to, and receive security from, said corporation. Appellant, however, contends that complainant was in reality the equitable owner of all the stock of said corporation from the time of its incorporation. Were this the fact, that of itself would not estop him from entering into the indenture of mortgage with the corporation, and proceeding to its foreclosure if necessary. This is a matter of common occurrence, and the decisions are many in support of such practice. Thus, in Oil Co. v. Marbury, 91 U. S. 587, 589, 23 L. Ed. 330, it is said:

"One of the objects of creating a corporation by law is to enable it to make contracts, and these contracts may be made with its stockholders as well as with others. In some classes of corporations, as in mutual insurance companies, the main object of the act of incorporation is to enable the company to make contracts with its stockholders. * * * It is very true that as a stockholder, in making a contract of any kind with the corporation of which he is a member, is in some sense dealing with a creature of which he is a part, and holds a common interest with the other stockholders, who, with him, constitute the whole of that artificial entity, he is properly held to a larger measure of candor and good faith than if he were not a stockholder. * * * If he should be a sole director, or one of a smaller number vested with certain powers, this obligation would be still stronger, and his acts subject to more severe scrutiny, and their validity determined by more rigid principles of morality and freedom from motives of selfishness. All this falls far short, however, of holding that no such contract can be made which will be valid, and we entertain no doubt that the defendant in this case could make a loan of money to the company."

And in Dewing v. Perdicaries, 96 U. S. 193, 24 L. Ed. 654, it is held that, where a cause of action affects a stockholder of a corporation specially, he has the same right to sue pro interesse suo as any one else.

In Henderson v. Railroad Co., 17 Tex. 560, the right of a stockholder to maintain a suit against the corporation was in issue. It was there stated that:

"A member of a corporation, who is a creditor, has the same right of action as any other creditor, and may even attach the property of the company, though he may be personally liable by statute to satisfy other judgments against it. Peirce v. Partridge, 3 Metc. (Mass.) 44. The individual members of the corporation are deemed strangers to the artificial body created by the act of incorporation, and may maintain their rights of action against the company, of whatever nature, in the same manner as those who are not members."

See, also, the early case of Waring v. Catawba Co., 2 Bay, 109.

Applying this rule to particular actions, we find the supreme court of Illinois holding that "a mortgage by a solvent corporation to one of its officers and stockholders to secure a loan made by him is not invalid on account of the relation between the parties." Bank v. Schott, 135 Ill. 655, 26 N. E. 640; Beach v. Miller, 130 Ill. 162, 22 N. E. 464; Roseboom v. Whittaker, 132 Ill. 81, 23 N. E. 339.

The complainant, then, had the right to loan money to the defendant corporation, and receive a mortgage in return. While he has occupied the position of principal shareholder in the corporation for many years, he has not acted as an officer or director; and there is nothing in the testimony or evidence to show that his influence has been exerted fraudulently or illegally in connection with said mortgage indebtedness, or that his own acts in relation thereto have been other than open and bona fide. The mortgage was executed years prior to the contract with appellant, and was a matter of record at the time appellant entered into the said contract. It is difficult to perceive how appellant's rights in the property, if any he has, can be affected by a proceeding to collect an indebtedness which existed as a lien upon the property prior to, and at the time of, the making of the contract under which appellant claims.

The next question for consideration arises under the assignments of error relating to the barring of certain of complainant's rights by time and laches. Appellant contends that the mortgage to complainant is extinguished by lapse of time, as well under the laws of the state of New York, where the same was made, as under the laws of the state of Nevada, and under the general rules of equity; that the bonds secured by the mortgage matured more than 14 years before complainant's suit was commenced, and the suit is therefore barred by the statute of limitations both of New York and Nevada; also, that the claim of complainant is stale and barred by laches, independent of the question of statutory limitation.

Considering this contention first under the general rule that the right to plead the statute of limitations is a personal privilege, of which the debtor may or may not avail himself, the question arises whether the defendant Hanchett (appellant) was entitled to make such a plea, if it should be proven that the defense of limitation was

a proper one in the case in controversy. The law does not pronounce any debt extinguished merely by virtue of the lapse of the statutory period. The debt continues, and may be collected, unless the defense of the statute of limitation be interposed by the debtor. No other person can plead it for him, and he may avail himself of the privilege, or not, as he pleases. Allen v. Smith, 129 U. S. 465, 470, 9 Sup. Ct. 338, 32 L. Ed. 732; Emory v. Keighan, 94 Ill. 543; Fish v. Farwell, 160 Ill. 236, 43 N. E. 367; Dunton v. McCook, 93 Iowa, 258, 61 N. W. 977; Kennedy v. Powell, 34 Kan. 23, 7 Pac. 606; Waterman v. Manufacturing Co., 14 R. I. 43.

As was said in Bank v. Kimble, 76 Ind. 195:

"The mere fact that a claim is old is no reason why it should not be paid. The law allows a man to be honest, and to pay an honest debt, however stale and ancient it may be. He may interpose the statute of limitations, but he may waive it, also. The law does not compel him to resort to this defense, nor can others insist upon it for him."

And, to the same effect, see Ewell v. Daggs, 108 U. S. 143, 2 Sup. Ct. 408, 27 L. Ed. 682; Chafee v. Blatchford, 6 Mackey, 459.

There is no evidence before the court to warrant the assumption that the defendant corporation did not consider the mortgage debt an honest debt. On the contrary, when the action of foreclosure was commenced, it acknowledged the indebtedness in the most conclusive manner,—by confessing judgment.

It is true that this privilege of pleading the statute of limitations has sometimes been extended to a party succeeding directly to the rights of the debtor,—as, for instance, a party who becomes a subsequent owner of the title or of the entire equity of redemption, or who is found in possession of the mortgaged property. Sanger v. Nightingale, 122 U. S. 176, 184, 7 Sup. Ct. 1109, 30 L. Ed. 1105. And the defendant Hanchett claims that with respect to property placed by the debtor beyond his control, or subjected by him to liens, the debtor has no longer such personal privilege; that by reason of certain work done under the contract between himself and the corporation, and by reason of his election to purchase the property, his right was no longer a mere option to purchase, but a vested, equitable title to the property; and that, while the corporation held the legal title, it held it simply as trustee for Hanchett, its vendee. It is shown that Hanchett made certain improvements upon the property, worked the mines for a period of time, and remitted the sum of $3,000 from the proceeds of such work. But it also appears that he failed to make the payments on the purchase price agreed upon in the contract, and asked and obtained an extension of six months' time,—to August 12, 1896. It is stated in the answer of Hanchett that "prior to the 12th day of August, 1896, this defendant exercised his said option [to purchase], and did elect to purchase all of said property from said corporation, in accordance with the terms of said contracts, and did notify said corporation thereof; that this defendant was then and there ready and willing and offered to pay to said corporation the full amount of the purchase price therefor, upon the execution by said corporation of good and sufficient conveyances conveying to this defendant, and granting to him,

good and sufficient titles to all of said property, free and clear of all incumbrances; that said corporation failed and refused, and has ever since failed and refused, so to do." These statements are not substantiated by any proofs. Letters were introduced which had passed between the defendant Hanchett and the corporation, but none of a later date than June 25, 1896. There is some testimony by the secretary of the company that the company was willing to extend this contract with Hanchett to January, 1897; but no writing is in evidence, or other testimony, to show that such extension was ever agreed upon by both parties. Nor is there any testimony in support of the defendant Hanchett's contention that he offered to complete his purchase of the property under the terms of the contract, and that the company refused to accept such offer. Under these circumstances, Hanchett's rights of succession to the debtor cannot be said to be established, as he is not shown to be the subsequent owner of the title, or of the equity of redemption; and by his own admission in a letter to the secretary of the defendant corporation dated January 2, 1896, he was not in full possession of the mortgaged property. But, even were his interest in the mortgaged property such that he might avail himself of the plea of the statute, he would first be obliged to show that the suit was barred as between the mortgagor and mortgagee. The statutes of limitation of actions, as enacted by the legislatures of the different states, are steadfastly followed by the courts of the United States as rules of decision in cases where they apply. Bauserman v. Blunt, 147 U. S. 647, 13 Sup. Ct. 466, 37 L. Ed. 316; Campbell v. City of Haverhill, 155 U. S. 610, 15 Sup. Ct. 217, 39 L. Ed. 240. And the rule is well settled that the laws of the forum govern the plea of the statute of limitations. Underwood v. Patrick, 36 C. C. A. 330, 94 Fed. 468, 471; Campbell v. City of Haverhill, 155 U. S. 610, 618, 15 Sup. Ct. 217, 39 L. Ed. 240. In the present inquiry, therefore, we must examine the law of the state of Nevada. The act of March 2, 1877 (St. Nev. 1877, p. 114; Gen. St. §§ 3644, 3645), amendatory of the act defining the time of commencing civil actions, approved November 21, 1861, provides as follows:

"Section 1. Actions other than those for the recovery of real property, can only be commenced as follows: Within six years: * * * An action upon a contract, obligation, or liability, founded upon an instrument in writing, except those mentioned in the preceding section [action upon a judgment]. * * *

"Sec. 2. The time in section one of this act shall be deemed to date from the last transaction, or the last item charged, or last credit given."

And in section 21 of the original act (November 21, 1861), as amended by the act of March 5, 1867 (Gen. St. Nev. § 3651), it is provided:

"If, when the cause of action shall accrue against a person, he be out of the state, the action may be commenced within the time herein limited after his return to the state; and if after the cause of action shall have accrued he depart the state, the time of his absence shall not be part of the time prescribed for the commencement of the action."

These statutes have been construed by the state courts of Nevada to embrace equitable as well as legal actions. White v. Sheldon, 4 Nev. 280. And section 21 has been held to apply to foreign cor-

porations as well as individuals absent from the state; to contracts made out of the state to be performed within it, as well as to contracts made within this state. Sutro Tunnel Co. v. Segregated Belcher Min. Co., 19 Nev. 121, 126, 7 Pac. 271; Robinson v. Mining Co., 5 Nev. 44, 75. Under the above statutes, can the foreclosure proceedings in controversy be deemed to be barred by the statute of limitations? Under sections 1 and 2, the calculation of time should begin with the date of the last credit given, which was in 1896, and appears to have been on April 21st. The complaint was filed July 21, 1897,—plainly, within the statutory period. By the laws of New York, also (the state wherein the bonds and mortgage sued upon were made, executed, and delivered), "a part payment of principal or interest takes the case entirely out of the statute of limitations." And if the amounts shown to have been received by the complainant, Blair, from the defendant corporation cannot be considered as credits on the mortgage debt, section 21, quoted above, will remove the bar of the statute from the defendant corporation, by reason of its absence from the state. "A foreign corporation cannot plead the statute of limitations, inasmuch as it has been 'out of the state.'" Larson v. Aultman & Taylor Co., 86 Wis. 281, 286, 56 N. W. 915; Tioga R. Co. v. Blossburg & C. R. Co., 20 Wall. 137, 143, 22 L. Ed. 331; State v. Central Pac. R. Co., 10 Nev. 47, 80.

The general reasoning upon the question of limitations may be said to apply to the defense of staleness of complainant's cause of action,—not with regard to the period of time elapsing, but to the equitable considerations involved. It has been repeatedly stated by the federal authorities that:

"Laches does not, like limitation, grow out of the mere passage of time. It is founded upon the inequity of permitting the claim to be enforced,—an inequity founded upon some change in the condition or relations of the property or parties." Galliher v. Cadwell, 145 U. S. 368, 12 Sup. Ct. 873, 36 L. Ed. 738. "The length of time during which a party neglects the assertion of his rights, which must pass in order to show laches, varies with the peculiar circumstan. s of each case, and is not, like the matter of limitations, subject to an arbitrary rule. It is an equitable defense, controlled by equitable considerations; and the lapse of time must be so great, and the relations of the defendant to these rights such, that it would be inequitable to permit the plaintiff now to assert them." Alsop v. Riker, 155 U. S. 461, 15 Sup. Ct. 167, 39 L. Ed. 223.

This inequity has been often held to arise from changed value of property during the time elapsing from the date of the transactions which are the subject of the suit, or from the changed relations of the parties to the property,—as when a sale has taken place, and new rights have arisen. Hubbard v. Trust Co., 30 C. C. A. 520, 528, 87 Fed. 51; Bartlett v. Ambrose, 24 C. C. A. 397, 399, 78 Fed. 839. The present case is not one of the class where the value of the property has risen greatly, or even perceptibly, while the complainant remained in repose; nor is it one where new rights have arisen, as it has not been proven that a sale has taken place to the defendant Hanchett. Each case of laches depends upon its own circumstances, and in the case at bar the complainant's inaction does not appear to have worked injury to any-

one; nor is it shown that there was any occasion for more promptly asserting his rights.

With regard to the assignment of error relating to the equitable right of the defendant Hanchett to a decree in his favor upon the pleadings and proof, it is only necessary to say that, from the evidence before the court, it is clear that, whatever interest or claim Hanchett may have in or to the property of the Silver Peak Mines, it is subsequent and subject to the lien of complainant's mortgage. The decree of the circuit court is affirmed.