SANTA MARINA CO. v. CANADIAN BANK OF COMMERCE.

(District Court, N. D. California, Second Division. October 24, 1916.)

No. 46.

1. BANKS AND BANKING ⊜⇒130(1)—DEPOSITS—LIABILITY FOR TRUST FUNDS.
    The secretary of complainant corporation received checks payable to complainant or order in payment of rents due the company. His only duty in connection with such checks was to appropriately indorse and deposit the same to complainant's account in its designated depository bank. A number of such checks he indorsed by himself as secretary without authority and deposited to his own personal account in defendant bank, where he also deposited money of his own. Upon this account he drew checks, some of which were to defendant in payment of notes given for money borrowed for his personal use. *Held*, that defendant was chargeable with notice that the checks so deposited were the property of complainant, and not of the depositor, and that so much of the deposit account as was made up of their proceeds was a trust fund; that, while it had the right to presume that checks given by the depositor for personal obligations were not intended to be paid from such fund so long as the account was sufficiently large, it was liable to complainant for money which it had itself received with reason to know that it came from the trust fund.
    [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 319, 320, 322, 327.]

2. BANKS AND BANKING ⊜⇒130(1)—DEPOSITS—LIABILITY FOR TRUST FUNDS.
    In such case, where the trust was one created ex maleficio, there could be no presumption that deposits subsequently made by the depositor of his own funds, and perhaps checked out to others than defendant, were replacement of the depleted fund, so as to exonerate defendant from liability.
    [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 319, 320, 322, 327.]

3. EQUITY ⊜⇒71(1)—LIMITATION OF ACTIONS ⊜⇒100(1)—LACHES.
    Complainant, having no other business than the care and rental of its buildings, and which therefore permitted its rentals, beyond the amount required for current expenses, to accumulate in bank until it desired to make a considerable payment on its mortgage indebtedness, was not chargeable with laches because it did not for three or four years dis-

cover the discrepancy between its bank balance and the reports made monthly by its secretary; nor was it barred of relief by Code Civ. Proc. Cal. § 338, which imposes a limitation of three years on actions for fraud or mistake, but provides that the cause of action shall not be deemed to have accrued until the discovery of the fraud or mistake, where suit was commenced promptly on such discovery.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 204–207, 209–211; Limitation of Actions, Cent. Dig. §§ 480, 493.]

4. PAYMENTS ⊙⇒39(4)—APPLICATION.

Where a corporation obtained judgments against a defaulting officer on an indebtedness for a part of which it afterward brought suit against defendant, it had the right to credit any sum collected by execution on the judgments first on the part of the indebtedness for which defendant was not liable.

[Ed. Note.—For other cases, see Payment, Cent. Dig. § 107.]

In Equity. Suit by the Santa Marina Company against the Canadian Bank of Commerce. Decision for complainant.

E. W. McGraw and J. E. Barry, both of San Francisco, for plaintiff.

Gavin McNab and Nat Schmulowitz, both of San Francisco, for defendant.

BLEDSOE, District Judge. This is a suit in equity, instituted for the purpose of securing a decree to the effect that a certain fund, which, it is alleged, is in the possession of the defendant, is held by defendant for the use and benefit of plaintiff. The facts as presented in the pleadings are involved in considerable complexity of detail, but I think may be stated fairly with brevity.

Previous to 1913, one Hooper was for some years a trusted employé of the Mercantile Trust Company, and was also the secretary and a trusted employé of the plaintiff corporation. Plaintiff had no other business than the ownership and control of two pieces of improved real estate in the city of San Francisco. One had situate upon it an eight-story office building, from which the income was very large, amounting to several thousand dollars each month; and the other a small store building, rented for a sum approximating $350 per month. The rents from these buildings were collected by two certain real estate firms, who, after deducting their commissions, would draw their checks in favor of plaintiff company, and these checks, in due course, would be delivered to Hooper, the secretary thereof. His sole function in this behalf was to indorse these checks in appropriate fashion and deposit them to the credit of the account of the plaintiff corporation in its sole depository, the Mercantile National Bank, an institution closely affiliated with, and in fact operating in the same building as, the Mercantile Trust Company, in which he was employed. Hooper's other principal functions as secretary were to render monthly reports of the receipts and disbursements of plaintiff corporation to its board of directors, and, in conjunction with an executive officer of the company, to sign checks for moneys drawn upon its funds and designed to meet its obligations. The rental of the smaller building of plaintiff above referred to was collected by the real estate firm of

Bovee, Toy & Co., and the net amount due plaintiff was paid to plaintiff regularly by their check drawn upon the Bank of California.

Hooper at the times herein under consideration maintained his individual bank account with defendant. Commencing in December, 1907, he followed the plan of appropriating to his own use, at irregular intervals, the moneys represented by monthly checks drawn by Bovee, Toy & Co. and payable to his employer, plaintiff herein. The first check so appropriated was for $297, and the method of appropriation was substantially as follows: The check was payable to the Santa Marina Company or its order. He indorsed it upon the back, "Santa Marina Company, by R. T. Hooper, Secretary," and in this form deposited it in defendant's bank in and to the credit of *his own personal account.* Similarly, with slight variations with respect to the form of the indorsement not material to this controversy, other checks were thus deposited until the amount thus appropriated totaled the sum of $6,775.98; the last deposit being made by him on the 23d of March, 1911. The checks all passed through the clearing house in due course and were regularly credited to the account of defendant bank. Other moneys belonging to Hooper and coming from other sources were deposited in his personal account in defendant's bank from time to time, and also checks were drawn upon the account in payment of personal obligations of his from time to time. In addition, he borrowed money of the defendant bank at certain dates beginning in February, 1909, and these sums were repaid by him, in installments, by checks drawn upon his personal account aforesaid from time to time. The last loan made to him was in July of 1912, in the sum of $1,500. Of that amount $1,000 was paid in 1914, through the sale by the bank of certain securities held by it, and the balance remains still unpaid. The total amounts borrowed by Hooper and by him repaid to the bank previous to March, 1913, amounted to $3,500.

In the last-named month the Mercantile Trust Company discovered that Hooper was an embezzler from it, and he was convicted of that crime and sentenced to the penitentiary. Immediately upon the discovery of his embezzlement being made known, officers of the plaintiff company investigated his accounts, and discovered for the first time that, though he had faithfully and correctly reported to them each month the amount of receipts coming into his hands as agent of the plaintiff company, and had correctly reported the disbursements from its account in the Mercantile National Bank, yet, by failing to exhibit to them from time to time the bank balance rendered monthly by that bank, they had not been apprised of the fact that the respective balances upon the books as shown by his reports exceeded the respective balances in the bank by the exact amount of his previous misappropriations hereinabove referred to. Thereupon demand was made upon defendant bank for a restitution of the moneys represented by the total amount of the checks drawn to plaintiff company and deposited in the defendant bank. The demand proving unavailing, this suit was brought as for the enforcement of a trust with respect to the moneys represented by all the checks so deposited.

Subsequently to the discovery of Hooper's peculations, and prior to

the institution of this proceeding, plaintiff brought two suits in the state courts against the defendant Hooper as for a money demand for the moneys covered by the misappropriated checks, as well as other demands inuring to plaintiff, and attached certain property standing in the name of Hooper. Upon the rendition of judgment, this property was sold to the attorney for plaintiff, upon the two several judgments rendered, for the sum of $1,000. The attorney, confessedly, bid it in as the agent and in behalf of his principal, the plaintiff herein. To the claim advanced by plaintiff, defendant has interposed several defenses, including the statute of limitations, as applicable to actions both at law and in equity, and has pleaded in addition the claim that the market value of the property acquired by plaintiff under and pursuant to the execution sales above referred to was largely in excess of the amount claimed to be due from it, and that in consequence no recovery should be had herein.

[1] There can be no doubt, in my mind, that the employé, Hooper, was in no wise expressly or impliedly authorized to do aught with the checks of plaintiff received by him other than to indorse and deliver them for deposit *with plaintiff's designated depository*. In transgressing his authorized function, and in depositing the checks, after indorsement, in the defendant's bank to his own account, he was guilty of a conversion of the moneys represented by the respective checks, such checks, and the moneys so represented, being at all times the property of the plaintiff company. The checks being the property of, and being drawn payable to the order of, plaintiff company, plaintiff could be divested of the title to them and the moneys represented only by some act or conduct upon its part substantially the equivalent of an order or check of its own making the moneys represented by the checks payable to it, payable to the order of Hooper. There is no suggestion, of course, of any such act or conduct. In receiving, then, checks drawn to the order of plaintiff, indorsed by Hooper as secretary, and tendered by him for deposit in his own private account, defendant was at once apprised of the fact that the transaction was essentially irregular, and that there was no apparent authority in Hooper thus to divest plaintiff of its right to and title in the moneys represented by the checks thus offered for deposit. It, itself, became, in this wise, a party to the conversion of the fund, and that it would have been liable therefor in a suit at law as for such conversion seems clear; but such question is immaterial in this action and need not be given consideration. It, in any event, was put upon notice that the money thus deposited and held in the personal account of Hooper was, in truth and in fact, the property of the plaintiff, and not the property of Hooper, and that defendant Hooper held it as a trustee of and for plaintiff.

Defendant bank had the right to assume, of course, that Hooper was intending to act honestly and in good faith toward plaintiff, and that he would be duly responsive to the trust subsisting in him. In this spirit, in the absence of any information coming to it that such payment constituted a misappropriation of plaintiff's property, it had a right to assume that any moneys drawn from the fund represented by the check delivered to it and made payable to some third person would be

intended by Hooper, and in fact be used, in complete recognition of the trust created by the deposit to his own account. As to any moneys, however, which he paid to defendant bank itself, in satisfaction of his own obligations, the bank indubitably knew that such payment constituted a violation of the trust, and by the same token knew that it was participating in the fruits of such violation. There can be no doubt, then, as to moneys paid by Hooper to the defendant bank, the bank would be liable to plaintiff, in equity, at least to the extent that such moneys so paid were taken from the trust fund. Union Stockyards Nat. Bank v. Gillespie, 137 U. S. 411, 11 Sup. Ct. 118, 34 L. Ed. 724; Manhattan Bank v. Walker, 130 U. S. 267, 9 Sup. Ct. 519, 32 L. Ed. 959; Central Nat. Bank v. Conn. Mut. Life Ins. Co., 104 U. S. 54, 26 L. Ed. 693; Duncan v. Jaudon, 15 Wall. 165, 21 L. Ed. 142; Am. Trust & Banking Co. v. Boone, 102 Ga. 202, 29 S. E. 182, 40 L. R. A. 250, 66 Am. St. Rep. 167; Interstate Nat. Bank v. Claxton, 97 Tex. 569, 80 S. W. 604, 65 L. R. A. 820, 104 Am. St. Rep. 885; Globe Savings Bank v. Nat. Bank of Commerce, 64 Neb. 413, 89 N. W. 1030; U. S. Fidelity & Guaranty Co. v. First Nat. Bank, 18 Cal. App. 437, 123 Pac. 352.

[2] It is the law, sustained by an overwhelming current of authority, that a cestui que trust will be entitled, in equity, to follow the trust fund, whithersoever it may go and whatsoever form it may assume, providing always that he is able to identify it. Central Nat. Bank v. Conn. Mut. Life Ins. Co., supra. If, as is the case herein, the trust fund has been blended or commingled by the trustee with his own funds, the right of the cestui to assert his ownership, by lien or otherwise, is preserved. Payments made by the trustee from the commingled fund, as for his own private use or benefit, will be presumed, perhaps conclusively so (In re Hallett, L. R. 13 Ch. Div. 696, 727–729), to have been made from that portion of the blended fund to which he had a right to resort, at least until the depletion of the trust fund has actually commenced. Any payments thereafter made will, of course, have to be regarded as a dissipation, pro tanto, of the trust fund itself. 39 Cyc. 540. To the extent that the trust fund may have been thus dissipated, the cestui que trust, in equity, at least to the extent of following the trust fund into the hands of innocent holders, will be remediless.

There are decisions, although apparently the holdings are not uniform upon the subject (Board of Commissioners v. Strawn, 157 Fed. 49, 51, 84 C. C. A. 553, 15 L. R. A. [N. S.] 1100), to the effect that any subsequent contributions to the undissipated portion of the blended fund by the trustee will be considered as restorations of the trust fund itself, pro tanto. United Nat. Bank v. Weatherby, 70 App. Div. 279, 75 N. Y. Supp. 3; Cohnfeld v. Tanenbaum, 176 N. Y. 126, 68 N. E. 141, 98 Am. St. Rep. 653. This rule, however, could hardly operate where the trust created was one ex maleficio, and where there could be no legitimate presumption indulged in of an intention to restore from a mere contribution of personal funds to the commingled fund. Neither could it apply, as I view it, to the defendant herein. Defendant was bound to know that a series of trusts in favor of plaintiff existed to the extent that checks payable to plaintiff were deposited, with-

out authority and without proper indorsement, to Hooper's credit. In the absence of controlling information, as to which there is no evidence, it had the right to assume that payments made by Hooper to third parties were not in contravention of any of the trusts; consequently it was not called upon at any time to assume, nor can it be held now to have known, that any personal moneys deposited by Hooper in the blended account were intended by him as restitution to the trust fund, to take the place of moneys which, in truth and in fact, but unknown to defendant, had been abstracted therefrom.

In this connection it should be observed that Hooper did not misappropriate the entire sum converted by him at any one time; his peculations extended over a period of two years and were irregularly carried on. Therefore, in receiving money from him on any specific occasion, in satisfaction of his own obligations due to it, the defendant bank would be charged with the knowledge only of preceding misappropriations, and with the then condition of the trust fund, or funds, considering all payments made therefrom prior thereto. In other words, plaintiff can recover against defendant, in this form of action, under the evidence herein, only to the extent that defendant received to its own benefit, in satisfaction of Hooper's obligations to it, moneys which defendant knew at the time constituted a portion of a trust fund equitably belonging to plaintiff. The lowest state of the account of Hooper, then, between all preceding misappropriations and a given payment by Hooper to defendant bank, would represent the amount of that particular trust fund identified and followable by plaintiff, and the maximum amount, therefore, of such fund for which defendant, because of its participation in the fruits of the fraud, can be holden responsible herein. The sum total of the various amounts from the respective trust funds, thus computed, would be the measure of plaintiff's total recovery.

The burden of showing the existence and identity of a trust fund in the first place devolved upon plaintiff; but the burden of showing a depletion or dissipation thereof, so as to exculpate defendant from the charge of participating in its fruits, falls on defendant. Smith v. Nottley, 150 Fed. 266, 80 C. C. A. 154. The proof in the case is insufficient to show the exact status of the trust funds at the times of the respective payments therefrom to defendant. In order to do justice between the parties, therefore, the court is of the opinion that it ought to reopen the case to allow the parties, if they shall be so advised, to present evidence showing the state of Hooper's account in defendant's bank, from time to time, so that the court may ascertain the amounts of the respective trust funds which went into the coffers of defendant. In the absence of further evidence, under the burden of proof resting upon defendant above referred to, the court will be compelled to assume and find that sufficient of the trust funds at all times remained undissipated to justify the conclusion that all of the moneys paid to defendant on account of Hooper's obligations, up to March 4, 1910, the date of his last voluntary payment, are subject to plaintiff's claim herein. There is no proof that any of plaintiff's money, to the knowledge of defendant or otherwise, went into the purchase of the securities hypothecated by Hooper and sold by the bank in 1914, as herein-

above referred to, and in consequence, under the evidence, no authority for the court to countenance any claim of plaintiff as against that payment made to defendant.

The above views, determinative of the general features of the case and expressive of the final conclusion to be indulged in by the court, has preceded, merely for convenience' sake, the presentation of matters urged by defendant by way of special defense. These have, however, received careful consideration.

[3] The defenses of laches and statutes of limitation may be considered together. It stands as indubitably true that the plaintiff made its demand and prosecuted this suit immediately after becoming advised in fact of the dishonesty of its employé and of the receipt by defendant of moneys belonging to it. Several of the statutes of limitation pleaded by defendant have only to do, however, with actions at law, of which this is not one. Section 338 of the Code of Civil Procedure of the state of California, which has also been pleaded, imposing a three-year limitation upon actions for relief on the ground of fraud or mistake, provides that the cause of action in such a case is not to be deemed to have accrued, and therefore the statute does not begin to run, until the discovery by the aggrieved party of the facts constituting the fraud or mistake. Substantially this is but a codification of the rule announced in Bailey v. Glover, 21 Wall. 349, 22 L. Ed. 636.

In Wood v. Carpenter, 101 U. S. 135, 25 L. Ed. 807, the Supreme Court held that, irrespective of the time of the actual discovery of the fraud, a party will be held to have been deprived of his remedy, if he delays bringing suit for the time prescribed after he was put upon notice sufficient to excite attention and call for inquiry; and this, for the reason that a party will not be permitted to fail to use diligence in informing himself as to wrongs suffered by him. The claim by defendant in this behalf is that, since plaintiff's depositary reported to it regularly the state of its account, it therefore was put upon inquiry from time to time to investigate the acts and conduct of its secretary, Hooper, and, if any investigation by it had been made, his peculations would have been immediately uncovered. In this connection, also, it is asserted that there was a duty resting upon the officers of plaintiff to investigate the acts of Hooper, and that the proper performance of this duty at any time subsequent to 1907, would have resulted in a complete discovery of the wrongs previously committed.

The answer to this, however, to my mind, is that there were no facts which were brought home to the officers of plaintiff sufficient to excite their suspicion or to put them upon inquiry with respect to the unauthorized conduct of Hooper. In good faith, and apparently with ample cause, plaintiff's officers reposed completest confidence in their secretary. Nothing occurred to give rise to the suspicion that he was other than he pretended to be, and therefore nothing arose calling for any investigation of his acts. Plaintiff at all times had a mortgage indebtedness of over $400,000 upon its property, and its income was almost entirely used in payment of interest and fixed charges; the small surplus being accumulated, apparently was left lying in bank until it would amount to sufficient to justify or entitle plaintiff to make a substantial payment upon the principal. For this reason there was not the

·occasion which otherwise might have existed requiring plaintiff's officers to be advised, from time to time, of the exact state of the account in the bank. If for any reason knowledge of its bank account could ·or should be imputed to plaintiff, if it had owed a duty to defendant, if, for instance, the case here had been against the Mercantile National, in which plaintiff had its account and from which it regularly received statements, the ruling of the court upon this branch of the case would be essentially different. Upon the facts adduced, however, I am constrained to conclude that plaintiff is at full liberty to assert that it used due diligence to arrive at the facts, immediately upon notice requiring it to act being brought home to it, and that therefore it is clearly within the exception to the statute relied upon by defendant.

The same reasoning applies largely to the defense of laches. Plaintiff acted promptly upon being apprised of the facts exhibiting defendant's liability, and the long delay which ensued between the time of the first misappropriation by the secretary, Hooper, and the time of suit, was in no wise due to any legal negligence upon the part of the plaintiff. It was due entirely to its utter ignorance of the true state of affairs. There was no legal duty, in the absence of something brought to its attention calculated to upset its confidence in its secretary, requiring it to investigate his acts; consequently there was no negligence in its mere failure so to do. To hold otherwise would make it incumbent on every person, in spite of information or bona fide belief to the contrary, to suspect every other person; it would be to disregard completely the legal presumption that the law has been followed and that every individual is honest and innocent of crime and wrongdoing. So to hold would be to negative our faith in humanity and disavow the confidences upon which the hopes of the world are founded. I can discover no reason why it would be inequitable under the circumstances detailed herein, to permit plaintiff, acting with the promptness it did, to seek to enforce its claim against defendant. Hanchett v. Blair, 100 Fed. 817, 827, 41 C. C. A. 76; London & San Francisco Bank v. Dexter Horton Co., 126 Fed. 593, 601, 61 C. C. A. 515.

Defendant cites a section of the Constitution of the state of California which makes directors and trustees of corporations "jointly and severally liable to the creditors and stockholders for all moneys embezzled or misappropriated by the officers of such corporations" during the term of office of such director or trustee, etc., and insists that this section establishes as a matter of law, responsibility for the misconduct of Hooper, and therefore establishes knowledge on the part of the directors of such misconduct. The conclusion would not follow from the premise in any event, and in addition it may be said that it is the corporation itself which is suing herein, and not the directors or stockholders, and in consequence under no possible theory could the section of the Constitution have any relevancy.

The above views dispose, also, of the claim advanced by the defendant that, because of the principle that, where one of two innocent persons must suffer by reason of the wrongdoing of another, he by whose negligence that wrong had occurred must take the consequences. There was no negligence on the part of the plaintiff, and there was

no innocency on the part of defendant, because defendant at the time it participated in the fruits of Hooper's misconduct, knew that it was taking to itself property which presumably belonged to plaintiff.

[4] The other matter urged by way of defense has to do with the purchase of property by plaintiff at the execution sales under judgments rendered against Hooper. The claim of defendant in this behalf is as inequitable as is the right asserted by plaintiff. Defendant's position, as I understand it, is that, irrespective of the items entering into the judgments secured by plaintiff in its suits against Hooper, the value of any property obtained by it pursuant to the sales under execution should be deducted from any general judgment to be otherwise recovered herein, on the theory that such value constituted a payment from Hooper to the plaintiff, and that defendant should be the beneficiary of the entire amount thereof. Plaintiff's contention, on the other hand, is that what it received at an execution sale, publicly conducted, as the result of a suit between itself and Hooper, is a matter in no wise affecting the liability of defendant to it because of the acts and conduct urged against defendant in this proceeding.

It is obvious to my mind, however, that the plainest principles of equity would require that, since some of the same moneys sued for herein were sued for in the actions against Hooper, if plaintiff received anything because of such suits and the judgments rendered in consequence thereof, in equity, the amount so received shall be regarded as a payment from Hooper on account, with respect to his indebtedness to plaintiff. Plaintiff would be entitled, however, there being other moneys due to it from Hooper, to credit the amount so received to Hooper's individual indebtedness first, and await a full satisfaction of that before it should be called upon to allow anything to defendant because of such receipts from Hooper.

These conclusions are largely academic, however, since, from a careful examination of the testimony respecting the property obtained by plaintiff under the execution sales and subsequently sold by it, I am persuaded that plaintiff got no more in cash upon its sale of the property than the same was reasonably worth, to wit, as testified to, $2,500. It appears from the evidence that the total amount of plaintiff's judgments against Hooper was $13,612.98. Of that only $5,700 represented money sued for in the case at bar. This left a balance of over $7,000 as an individual indebtedness of Hooper in no wise related to the liability of defendant, and of course the $2,500 received sufficed to satisfy but a fractional part of that. Defendant will be entitled, therefore, to no credit herein because of property acquired by plaintiff at the execution sales.

As indicated hereinabove, the question of the precise liability of defendant to plaintiff will depend upon the status of the respective trust funds at and prior to the time of the participation by defendant in moneys coming from such trust funds. The court is unable from the evidence now before it to determine this matter with accuracy and precision. It, therefore, will make an order that the parties may, on a day to be specified, severally offer evidence with respect to the condition of Hooper's account in the defendant bank, from time to time, during the period herein under review, and upon the coming in of

such evidence the court will then make and enter its decree in consonance with the views hereinabove expressed, fixing the amount of recovery, if any, to be had by plaintiff of and from the defendant.